QUINTANA RACING PARK, INC., y LAS MONJAS RACING CORPORATION, demandantes y apeladas, *v.* COMISIÓN HÍPICA INSULAR DE PUERTO RICO, y sus miembros F. J. RICHARDSON, ANTONIO ARROYO, PEDRO J. BARBOSA, ENRIQUE GATELL y JOSÉ DÁVILA RICCI, demandados y apelantes.

No. 5718.—*Sometido:* Abril 7, 1933. *Resuelto:* Septiembre 29, 1934.

*R. Martínez Nadal, E. Martínez Rivera* y *Diego O. Marrero,* abogados de los apelantes; *Leopoldo Feliú,* abogado de las apeladas.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

La Comisión Hípica Insular suspendió temporalmente las licencias que las corporaciones Quintana Racing Park, Inc., y Las Monjas Racing Corporation tienen para celebrar carreras de caballos en sus hipódromos, por el motivo de haber rebajado esas corporaciones los sueldos de ciertos empleados de los hipódromos que ellos pagan pero que son nombrados por la demandada, Comisión Hípica Insular. La Corte de Distrito de San Juan declaró que dichas corporaciones pueden fijar esos sueldos y en consecuencia anuló la orden de suspensión de las licencias y la demandada interpuso esta apelación.

Las corporaciones apeladas tienen como único negocio celebrar carreras de caballos en sus respectivos hipódromos y los juegos de ''pool'' y banca mediante una licencia que les ha expedido la comisión apelante previo pago por cada una de ellas de la cantidad de $300 por un año. En ese negocio tienen invertida cada una gran cantidad de dinero y tenían en la fecha a que este litigio se refiere contratos para asegurar la concurrencia de caballos a las carreras que celebraran cada domingo durante el año de su licencia.

Las citadas corporaciones notificaron en 31 de diciembre de 1930 a la Comisión Hípica Insular que habían acordado rebajar los sueldos de los empleados del hipódromo que los directores de ellos tienen que pagar por mandato de la ley pero que son nombrados por la Comisión Hípica Insular.

Ésta había fijado esos sueldos y por la rebaja hecha por las corporaciones suspendió las licencias de las mismas para celebrar carreras de caballos. La comisión no impugna esa rebaja porque haya sido excesiva o irrazonable sino porque entiende que ella es la que tiene autoridad para fijar los sueldos que pagan las corporaciones. Durante un año y cinco meses las corporaciones habían pagado los sueldos fijados por la comisión para esos empleados.

La Ley No. 21 de 1925 (pág. 147) concedió a la Comisión Hípica Insular la facultad de nombrar todos los funcionarios y empleados de los hipódromos, de asignar sus sueldos y le impuso el deber de pagarlos. La Ley No. 40 de 1927 (pág. 207) autorizó a la Comisión para nombrar determinados empleados de los hipódromos cuyos sueldos asignaría y pagaría y dispuso que los directores de los hipódromos estaban obligados a nombrar determinados empleados cuyos sueldos serían pagados por ellos. Por la enmienda hecha a esa ley por la No. 44 de 1929 (pág. 239) la comisión nombrará ciertos empleados cuyos sueldos asignará y pagará y nombrará también a los empleados que antes designaban los directores de los hipódromos, quienes seguirán con la obligación de pagarlos. Dos de las enmiendas hechas en 1929 a la ley de 1927, vigente cuando en diciembre de 1930 ocurrieron los hechos origen de este procedimiento, leen como sigue:

"Art. 7.—La Comisión Hípica Insular nombrará para cada hipódromo en explotación, los siguientes funcionarios: tres jueces, quienes formarán el jurado, siendo el presidente elegido por el jurado, dentro de sus miembros, tres jurados suplentes, un secretario del jurado; dos jueces de pool y bancas; un instructor de jockeys; cuatro jueces de pista, un colector de multas y un *time-keeper*.

"Además nombrará un secretario para la Comisión y todos aquellos otros empleados que creyere necesario para su oficina, asignando a todos ellos el sueldo o dieta que creyere razonable; *Disponiéndose,* que ningún sueldo o dieta será mayor de doscientos (200) dólares mensuales, y todos estos sueldos o dietas se pagarán de los fondos de la Comisión Hípica que más adelante se crean por esta Ley.

"La Comisión Hípica Insular nombrará, asimismo, un *starter* y un *assistant starter,* un juez de peso, un *assistant* juez de peso, un juez de *paddock* y un ayudante del juez de *paddock;* un *clocker,* un juez de inscripciones, dos ayudantes abanderados, un veterinario, un médico y un inspector de monturas. Los directores del hipódromo pagarán los sueldos de estos empleados. La Comisión Hípica tendrá poderes para nombrar aquellos empleados adicionales que considere necesarios para llenar los fines de esta Ley y proteger los intereses del público en general.

"La Comisión Hípica Insular podrá remover a cualquier funcionario por ineficiencia, negligencia en el cumplimiento de su deber o mala conducta en el desempeño de sus funciones, dándole una copia de los cargos que existan contra él y una oportunidad de ser oído en persona o por medio de abogado en su propia defensa dentro de los diez (10) días siguientes a la fecha de la notificación de los cargos.

"Art. 13.—En los hipódromos de Puerto Rico se descontará el veinticinco (25) por ciento de las cantidades apostadas en las bancas alemanas o *pari-mutuel,* después de deducir el importe apostado a los caballos ganadores en las bancas respectivas, y el veinticinco (25) por ciento del total bruto de las apuestas que se crucen en el *pool.* El total bruto que se derive por concepto de dichos descuentos deberá ser distribuído en la siguiente forma: ochenta y siete (87%) por ciento para la corporación explotadora del negocio y trece (13) por ciento para los fondos de la Comisión Hípica Insular; *Disponiéndose,* que los hipódromos donde el *pool* no exceda de cinco mil (5,000) dólares por día de carreras y donde el ingreso bruto por concepto de·bancas no exceda de dos mil (2,000) dólares, quedan exentos de todo descuento para los fondos de la Comisión Hípica; debiendo las corporaciones explotadoras de dichos hipódromos satisfacer el importe de las dietas y sueldos de los jurados y demás empleados."

El último artículo lo copiamos solamente como ilustración de cómo se forma el fondo con que atiende a sus pagos la Comisión Hípica, habiendo también otros preceptos con él relacionados, porque por él se conoce la distribución del dinero que producen los hipódromos y porque la apelante lo cita, pero no porque creamos que es necesario para resolver la cuestión en controversia para la que basta el artículo 7 citado.

Esa ley faculta expresamente a la Comisión Hípica·In-

sular para asignar los sueldos o dietas de los funcionarios y empleados que ella nombre y paga pero no le confiere la facultad de fijar o asignar los sueldos de los empleados que han de pagar los directores de los hipódromos y que son nombrados por la Comisión, por lo que tenemos que llegar a la conclusión de que los sueldos o dietas que pagan los directores de los hipódromos pueden ser asignados por ellos ya que la ley no le dió esa facultad expresamente a la comisión como se la confirió cuando se trata de los empleados pagados por ella. Tal como está redactada la ley debe ser interpretada en ese sentido, pues si hubiera querido que esos sueldos los fijase la comisión lo hubiera dicho expresamente como lo hizo para los sueldos de los otros empleados, pues generalmente fija el sueldo la persona que ha de pagarlo. El único argumento de la apelante contra esa conclusión, de que los directores de los hipódromos podrían fijar los sueldos tan bajos para los empleados que paga que obstaculizaría a la comisión encontrar personas que los desempeñen para el fiel cumplimiento del propósito fiscalizador de la ley, no tiene razón de ser en este caso por no haberse alegado que las rebajas hechas por los directores de los hipódromos en los sueldos que tienen que pagar sean de la naturaleza a que se refiere la apelante.

La tardanza en ejercitar esta acción de *injunction* para impedir que la comisión cumpliera su resolución de suspensión temporal de las licencias de las apeladas para celebrar carreras de caballos no es obstáculo a la pretensión de las corporaciones demandantes, pues el hecho de haber pagado durante un año y cinco meses los sueldos que había fijado la Comisión Hípica Insular no causó a ésta perjuicio alguno. *Martínez* v. *Porto Rico Railway, Light & Power Co.*, 18 D.P.R. 725. Aparte de esto, no aparece de los autos que la necesidad para las demandantes de rebajar los sueldos surgiera antes de su acuerdo en tal sentido, de diciembre de 1930.

*La sentencia apelada debe ser confirmada.*