Martinez v. Porto Rico Railway Light and Power Company.

Apelación procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 827.—Resuelto en junio 26, 1912.

Injunction—Ataques a la Propiedad, (Trespass)—Remedio Adecuado en Ley.—En los casos de *injunction* que tienen por objeto evitar la continuación repetida de ataques a la propiedad, (*trespass*) lo mismo que en todos los demás casos, cuando el peticionario tiene un remedio adecuado en ley para obtener indemnización pecuniaria por tales ataques a la propiedad, no debe expedirse el auto de *injunction*.

Id.—Perjuicios Irreparables—Indemnización Pecuniaria—Imposibilidad de Apreciar los Daños en Dinero.—Para que pueda concederse el remedio extraordinario de *injunction* es necesario que exista un perjuicio irreparable que surja de la misma naturaleza del daño o de la falta de responsabilidad de la persona que lo comete. Un daño es irreparable cuando es de tal naturaleza que la parte que lo sufre no puede ser adecuadamente compensada de él por medio de indemnización, o cuando los daños que surjan no puedan ser debidamente apreciados en una cantidad de dinero.

Id.—Perjuicios Irreparables—Remedio Adecuado en Ley—Compensación en Dinero.—Por regla general cuando el perjudicado tiene un remedio eficaz, completo y adecuado en ley, no puede decirse que existe un perjuicio irreparable, ni tampoco cuando por medio de una acción en ley puede obtener compensación en dinero por los daños sufridos.

Id.—Perjuicios Irreparables—Demanda Insuficiente—Hechos Determinantes del Perjuicio Irreparable.—Es insuficiente una demanda de *injunction* en la que sólo se alega que el demandante sufre perjuicios irreparables con los actos del demandado, sin exponer hechos constitutivos de dichos perjuicios irreparables, para que la corte pueda venir en conocimiento de que efectivamente esos perjuicios son irreparables.

Id.—Dilación Injustificada en Pedir el Injunction—Gastos de Grandes Sumas de Dinero por el Demandado.—El derecho a un *injunction* puede ser perdido por dilación injustificada del peticionario, durante cuyo tiempo el demandado ha gastado grandes sumas de dinero y el público ha llegado a tener algún interés en el asunto. De acuerdo con esta doctrina el dueño de un solar que entra en negociaciones con un municipio para cederle una franja de terreno de dicho solar para la construcción de una calle, y permite que se abra y construya la calle, y se coloque una vía férrea para tranvías eléctricos y se utilice dicha vía por algunos meses, sin impedir la ejecución de esos actos y sin acudir a un tribunal para que se respetara su propiedad, no puede después que la compañía de carros eléctricos ha gastado una gran cantidad de dinero en la instalación de su vía, impedir el servicio público por medio de un *injunction*.

Id.—Entrada en una Finca de Buena Fe—Consentimiento del Supuesto Dueño.—Cuando se entra en una finca de buena fe con el consentimiento de una persona que representa ser el dueño, o bajo la creencia equivocada en cuanto al dominio, y un *injunction* sería de poco valor para el dueño y de gran perjuicio para el demandando, no debe concederse el *injunction*.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Rafael López Landrón.*

Abogado del apelado: *Sr. J. Henri Brown.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

En 9 de octubre de 1911 Manuel Martínez y Casanova presentó en la Corte de Distrito de San Juan, Sección 2ª., una petición de *injunction* dirigida contra The Porto Rico Railway, Light and Power Co., en la que alegó sustancialmente ser dueño y poseedor de dos fincas situadas en el sitio llamado Bayola del Barrio de Santurce, de la municipalidad de San Juan, en Puerto Rico, las que la corporación demandada atraviesa frecuente y regularmente de día y noche con sus carros eléctricos llevando a efecto su negocio de portador público de pasajeros, mediante un ferrocarril colocado sobre dichas fincas; que la expresada vía fué colocada sin el consentimiento y contra la voluntad del peticionario, sin autorización legal y sin que el peticionario jamás haya consentido en dichas invasiones de la demandada ni en el establecimiento o continuación de presunta servidumbre, ni tampoco ha sido autorizada ni sancionada por ninguna autoridad legal para el expresado uso en esas fincas, como tampoco ha indemnizado cantidad al-

guna al peticionario; que el uso de esos terrenos en la forma
indicada constituye una invasión continua (*trespass*) y con-
tinuará indefinidamente, puesto que dichos actos ilegales son
para llevar a efecto el negocio de portador público de pasa-
jeros; alegó también, que por haber sido privado en parte
del uso de esas dos fincas, ha sufrido daños y perjuicios y
continuará sufriéndolos si dichos actos continúan, así como
que por la repetición de ellos obtendrá la demandada una ser-
vidumbre por prescripción sobre dichos terrenos; y después
de alegar asimismo que la violación de sus derechos por la
demandada le causa daños irreparables y que no tiene remedio
adecuado contra ellos, excepto por *injunction,* concluyó pi-
diendo a la corte ordenara a la demandada que desistiese en
el uso de los mencionados terrenos del peticionario, que re-
mueva de ellos el ferrocarril, y que le indemnice por los daños
y perjuicios que ha sufrido, concediéndole también cualquiera
otra reparación como la equidad pueda dar.

La contestación de la corporación demandada fué en re-
sumen, que su vía está tendida sobre una calle que pasa a
través del sitio llamado Bayola en el Barrio de Santurce, tran-
sitada frecuentemente por sus carros; que no ha pedido con-
sentimiento ni autorización al peticionario para colocar su
vía en ese sitio de Bayola, porque las vías de la demandada
están tendidas sobre una calle pública, abierta por el municipio
de San Juan, y no sobre propiedad privada del peticionario, y
la franquicia de la demandada la autoriza para tender sus vías
por las calles y caminos públicos; que la demandada es una
corporación de servicio público y ha estado operando sus lí-
neas como tal sobre dicha vía por algunos meses; que el auto
de *injunction* no es el remedio adecuado del demandante, por-
que ya está colocada dicha vía, la que ha sido usada por varios
meses en la misma forma que se hace al contestar la demanda;
que si alguno ha desposeído de sus terrenos al demandante, ha
sido la ciudad de San Juan y no la demandada; que antes de
colocar su vía por el sitio denominado Bayola, la ciudad de
San Juan dirigió a la demandada una carta pidiendo la cesión

de una parcela de terreno a dicha ciudad para abrir una calle
en el sitio denominado Parque Borinquen, conviniendo en ello
la demandada siempre que la ciudad de San Juan extendiese
la calle de las Nereidas hasta el Parque Borinquen y cediese a
la demandada una servidumbre para colocar su vía de tran-
vías eléctricos sobre ella; y que habiendo la ciudad de San
Juan comenzado a extender y afirmar dicha calle, la deman-
dada de buena fé colocó su vía en ella, suponiendo que la ciu-
dad había obtenido el permiso de los dueños de las fincas sobre
las que dicha calle se extendió; y después de exponer también
que la demandante no ha alegado en su demanda en qué forma
sería perjudicada en el valor de su terreno y que los hechos
por él expresados, no consignan ningunos daños irreparables;
o tales daños que le permitieran solicitar un auto de *injunc-
tion,* concluye con la súplica de que se dictara sentencia a su
favor con las costas al demandante, desestimando la solicitud
de *injunction.*

Celebrado el juicio correspondiente, la corte de distrito
dictó sentencia en 31 de octubre de 1911 desestimando la peti-
ción con las costas, y contra ella se ha interpuesto el presente
recurso de apelación por Manuel Martínez Casanovas.

De la prueba aportada al juicio resulta que entre la calle
de las Nereidas, en los límites de·la finca el Condado de los
hermanos Behn en San Juan, y el Parque Borinquen, existe
una porción de terreno en la que hay fabricadas algunas casas
con espacio entre ellas para calle, y formando parte de esa
porción de terrenos hay dos parcelas pertenecientes a Manuel
Martínez Casanovas, por las cuales, así como por el espacio
entre las casas, se transita públicamente a pie y en vehículos;
que en el mes de noviembre o diciembre de 1910 la corpora-
ción demandada comenzó los trabajos de tender su vía desde la
calle de las Nereidas en la finca el Condado, hasta el Parque
Borinquen, atravesando con ella los. mencionados terrenos
de Martínez Casanovas, aun cuando al empezar los trabajos en
ellas el peticionario puso una cerca en sus terrenos, y queda-
ron paralizadas las obras hasta que cuatro días después apa-

reció derribada y construída la vía en esas porciones, quedando colocada desde entonces y siendo por ella transportados todos los materiales para la construcción de lo que restaba; que en 6 de febrero de 1911 la corporación demandada escribió una carta al alcalde de la ciudad de San Juan, recordándole que en 27 de junio de 1910 había escrito al anterior alcalde, Sr. del Valle, diciéndole que estaba dispuesta a cederle una faja de sus terrenos del Parque Borinquen para que abriera y afirmara una calle, reservándose el derecho de colocar en ella su vía si lo creía conveniente, con tal que la ciudad diera los pasos necesarios para abrir la proyectada calle nueva entre los límites del Parque Borinquen y la propiedad de los hermanos Behn, o sea la prolongación de la avenida de las Nereidas, permitiéndole colocar en ella su vía para carros eléctricos; que no había recibido contestación a esa carta, pero como la ciudad de San Juan construyó la calle en los terrenos del Parque Borinquen de la corporación demandada, entendía ésta que había aceptado la oferta suya y en consecuencia había procedido a construir su vía en la calle existente entre el Parque Borinquen y la propiedad de los hermanos Behn.   También resulta que en 30 de junio de 1911, víspera del día en que la corporación iba a inaugurar el servicio público de conducción de pasajeros por esa vía, fué requerida notarialmente por Martínez Casanovas para que se abstuviera de utilizar los terrenos de esas parcelas pasando por ellas su tranvía, o de hacerlo en cualquier otra forma; para que levantara la vía que tenía tendida en ellos y para que no destruyera las cercas que pusiera en los mismos.   Por la época en que fué tendida la vía, la ciudad de San Juan afirmó como calle ese trozo de terreno entre la calle de las Nereidas y el Parque Borinquen.

De la prueba testifical resulta que el peticionario sabía que la ciudad tenía en proyecto abrir una calle por sus terrenos; que por su acuerdo, su apoderado escribió una carta al alcalde de la ciudad de San Juan respecto a la ocupación de tales terrenos para calle, pendiente de que el declarante diera su consentimiento una vez que aceptara los precios que pudieran

haber entre unos y otros; que la ciudad afirmó la calle que atreviesa sus fincas casi por la mitad; que nadie le ha indemnizado por tal ocupación y que desde noviembre de 1910 tal vía ha sido utilizada primero, para conducir materiales y luego para el transporte de pasajeros.

Como resumen de toda la evidencia podemos decir que aun cuando el peticionario puso una cerca en sus terrenos, no ha demostrado quien la derribó; que hasta el 30 de junio de 1911 no dió aviso a la corporación demandada para que no utilizara la vía, cuando ya hacía algunos meses que estaba en uso; que no ha justificado daños especiales y que la vía está tendida en una calle afirmada por el ayuntamiento de esta ciudad y bajo la creencia de la demandada de que tal calle pertenecía a la ciudad.

Los seis primeros motivos de error alegados por el apelante en apoyo de que la sentencia sea revocada, descansan en el principio de derecho de que nadie puede ser privado de su propiedad sino por autoridad competente, por causa de utilidad pública y mediante la correspondiente indemnización.

El séptimo y último motivo alega la infracción de la Ley de *Injunction.*

El principio en que descansan los seis primeros motivos de error es cierto, porque nadie puede ser privado de su propiedad sino con los requisitos que antes se consignan, pero el que esto sea así, no es bastante para que una solicitud de *injunction* haya de prosperar necesariamente.

La demanda en este caso claramente dice que la petición de *injunction* tiene por objeto evitar la continuación repetida de ataques a la propiedad descrita en ella (*trespass*). Pero de todos modos cuando el peticionario tiene un remedio adecuado en ley para obtener indemnización pecuniaria no debe expedirse el auto de *injunction.* No serán concedidos pleitos en equidad en ningún caso en que un claro, adecuado y completo remedio pueda obtenerse por la ley.

Para que puede concederse el remedio extraordinario de *injunction* debe existir un perjuicio irreparable que surja de

la misma naturaleza del daño o de la falta de responsabilidad de la persona que lo comete; y por tanto un daño es irreparable cuando es de tal naturaleza que la parte que lo sufre no pueda ser adecuadamente compensada de él por medio de indemnización, o cuando los daños que surjan no puedan ser debidamente apreciados en una cantidad de dinero. Pero en general, cuando hay un eficaz, completo y adecuado remedio en ley no es irreparable el daño, ni tampoco cuando una completa compensación en dinero puede ser obtenida por medio de una acción en ley. (*Dudley* v. *Hurst,* 1 Am. St. Reports y casos citados en la nota, página 377; *Martínez* v. *Moreno,* 10 D. P. R., 84; *Lothrop, Luce & Co.* v. *Rosner,* 10 D. P. R.,90.)

En este caso por la demanda y por la prueba aparece claramente que el demandante puede obtener una compensación pecuniaria, toda vez que en aquélla pide que se condene a indemnizar los perjuicios sufridos y que sufra, y por la segunda se viene en conocimiento de que el demandante estaba en relaciones con el ayuntamiento de esta ciudad para cederle parte de sus terrenos para la construcción de una calle mediante una compensación pecuniaria.

Pero a más de esto la demanda es en sí deficiente porque se limita a exponer que con los actos del demandado sufre perjuicios irreparables, pero no expone hechos de donde la corte pueda venir en conocimiento de que efectivamente esos daños son irreparables; y la mera alegación de que se ha sufrido daño irreparable, sin exponer en qué consisten, no es suficiente. (Abbott's Trial Brief, Vol. 1, p. 537, y casos en él citados.)

Además, el demandante no fué diligente en conservar su propiedad y en impedir la colocación de la vía férrea, y sabiendo que se proyectaba la construcción por sus terrenos de una calle en la que se colocaría una vía para carros eléctricos, permitió que el ayuntamiento de esta ciudad afirmara como calle parte de sus terrenos y que la corporación demandada tendiera por ella su vía, sin avisarle oportunamente de su oposición ni acudir enseguida al tribunal para que se sostuviera

su derecho, sino que antes al contrario dejó que la demandada la construyera, empleando como es consiguiente una fuerte suma de dinero, y solamente cuando después de algunos meses de utilizar la vía va a comenzar el servicio público de conducir pasajeros, es cuando intenta poner obstáculos a tal vía férrea mediante una notificación en tal sentido y posterior presentación de la demanda de *injunction* tres meses después.

Estas circunstancias parecen demostrar que el peticionario demoró su acción, para poder obtener bajo ellas un mayor precio por sus terrenos.

El derecho a un *injunction* puede ser perdido por dilación de la parte durante la cual el demandado ha gastado grandes sumas de dinero y el público ha llegado a tener algún interés. (Lewis on Eminent Domain, p. 1615.)

Un *injunction* no es una cuestion de derecho y no será librado cuando después de una amplia consideración de la situación de las partes, no se demuestra que se ha obrado de buena fe. Una dilación injustificada independientemente de cualquier estatuto de prescripción constituye una defensa en una corte de equidad. Así un *injunction* será rehusado cuando el peticionario intencionalmente dilató su petición hasta que obtuvo ventaja sobre el demandado. La regla de que el derecho de una persona a un *injunction* puede ser destruída por su abandono, incluye aquellos casos en que el demandante ha detenido su acción y ha permitido que el demandado gaste grandes cantidades de dinero en el ejercicio de su supuesto derecho, y en tal caso no sería justo conceder el *injunction* y la petición carece de ese remedio legal. (Joyce on *Injunctions,* Vol. 1, pp. 86 y 87.)

A más de esto, la demandada tendió su vía en la creencia, de buena fe, de que la colocaba en una calle del ayuntamiento, toda vez que éste había tomado los terrenos que él le cedió con la condición de que abriera tal calle. Cuando se entra en una finca de buena fe, con el consentimiento de una persona que representa ser la dueña o bajo la creencia equivocada en cuanto al dominio, y un *injunction* sería de poco valor para el

dueño y de gran perjuicio para el demandado, no debe concederse.    (Lewis on Eminent Domain, sec. 904; *Pickert* v. *Ridgefield Park R. R. Co.,* 25 N. J. Eq., 316; *Erie R. R. Co.* v. *Delaware & R. Co.,* 21 N. J. Eq., 283.)

Este demandante pudo al principio de los trabajos haber obtenido que no se realizaran en sus fincas, pero él no utilizó entonces sus recursos legales para poner obstáculo a la obra y no puede en estos momentos después de algunos meses de realizadas, tratar de impedir el uso de la vía y por tanto el servicio de conducción de pasajeros, que traería como consecuencia más perjuicio para el público en general y especialmente para los vecinos de aquellos contornos que para la corporación demandada, cuando tiene acción en ley para recobrar de quien proceda los perjuicios que se le hayan originado.

Por estas razones la sentencia debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y del Toro.