SERGIO TORRUELLA CORTADA, demandante y apelante, *v.* SUCN. J. SERRALLÉS, demandada y apelada.

Núm. 7993.—*Sometido:* Abril 23, 1940. *Resuelto:* Julio 10, 1940.

---

\* NOTA: Véase el prefacio.

*Raúl Matos,* abogado del apelante; *Francisco Parra Capó* y *Francisco Parra Toro,* abogados de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Este es un pleito de *injunction* iniciado por Sergio Torruella Cortada en la Corte de Distrito de Ponce contra la sociedad civil agrícola e industrial Sucesión Serrallés en solicitud de que se dicte sentencia ordenando a la demandada que se abstenga perpetuamente de extraer agua de los pozos construídos en su propiedad a la distancia en que los mismos se encuentran de otro pozo perteneciente al demandante construído en su finca, con imposición de costas, gastos y honorarios de abogado.

Contestó la demandada, fué el pleito a juicio y la corte lo resolvió por sentencia de abril 27, 1939, declarando la demanda sin lugar, con costas, pero sin incluir honorarios de abogado por tratarse de cuestiones técnicas debatibles. Y es contra esa sentencia que se ha interpuesto el presente recurso de apelación, habiendo una y otra parte presentado amplios alegatos reveladores de un estudio detenido e inteligente de todas las cuestiones envueltas.

De las alegaciones y de la estipulación que ambas partes presentaron para los efectos del juicio en su fondo, resultan aceptados los siguientes hechos:

El demandante es dueño de una finca rústica de treinta y ocho cuerdas, según los títulos, y cincuenta y cuatro, según mensura, ubicada en el barrio de Machuelo Abajo, sitio Monte Grande, término municipal de Ponce, y la demandada es dueña de un condominio de una tercera parte y arrendataria del remanente de otra finca colindante con la del demandante, de novecientas veinte y ocho cuerdas.

Ambas fincas estuvieron arrendadas a una sola persona, quien, hace más de treinta años, a fin de regar las cañas

dulces que en una y otra cultivaba, alumbró aguas del subsuelo de las dos, estableciendo una planta de irrigación compuesta de doce pozos tubulares en batería conectados por un tubo horizontal, quedando enclavados siete de los pozos y el aparato de succión en la finca del demandante y cinco pozos y el punto de descarga en la finca de la demandada.

Con esa planta, movida por un solo motor, regaba el arrendatario diez y seis cuerdas de la finca del demandante y cierto número de cuerdas de la finca de la demandada—de ciento setenta y cinco a ciento ochenta, según declaración del testigo de la demandada no controvertida por el demandante, James Marvin Giles.

El riego de ambas fincas continuó en la misma forma después que el arrendatario cesó de cultivarlas por haber terminado su contrato, pasando la de novecientas cuerdas a la demandada y la de treinta y ocho al demandante que la arrendó a Vidal Febles por término de cuatro años a partir de julio 1, 1937, subarrendándola Febles a la demandada, hasta que recientemente la demandada, sin permiso ni licencia del demandante y contra su voluntad, construyó dos pozos profundos a 18.15 y a 34.42 metros del último pozo del demandante que es uno de los construídos hace más de treinta años por el arrendatario entonces de su finca, quedando los tres pozos en línea recta. Una vez instalados los nuevos pozos, la demandada abandonó los antiguos y riega sus cultivos en ambas fincas con el agua que de ellos obtiene.

Hasta ahí los hechos no controvertidos. El conflicto surge cuando el demandante sostiene que la demandada actuó en contra de la ley—artículos 22, 23 y 24 de la Ley de Aguas—y su actuación le causa daños de consideración, de difícil justiprecio e imposible reparación, porque se apropia de aguas del subsuelo de su finca, distrayéndolas de su corriente natural, con detrimento de sus labores agrícolas, careciendo para hacer valer su derecho de todo otro recurso rápido y eficaz en el curso ordinario de la ley que no sea el de *injunction* perpetuo que ejercita, y cuando la demandada replica que

habiéndose alumbrado al mismo tiempo las aguas para el riego de ambas fincas en las proporciones indicadas y usádose los doce pozos construídos en ellas como una unidad de riego, la construcción de los nuevos pozos es una mera sustitución de los viejos y no un nuevo alumbramiento, y que el *injunction* no procede por no haber el demandante demostrado que ha sufrido perjuicios, ya que sigue contando a virtud del producto de sus pozos antiguos no obstante la merma advertida, con más agua que la que proporcionalmente correspondió a su finca desde un principio.

Conocemos cómo decidió el conflicto la corte sentenciadora. ¿Fué su decisión correcta? Véamoslo.

Para no hacer demasiado extensa esta opinión y para no incurrir en repeticiones innecesarias, en vez de estudiar separadamente cada uno de los errores que señala el apelante en su alegato de más de ciento cincuenta páginas, algunos de los cuales se refieren a los razonamientos de la sentencia y no a la sentencia misma, nos enfrentaremos desde un principio al problema a decidir en su totalidad, partiendo de los hechos aceptados y de los que siguen que declaró probados la corte sentenciadora, correctamente a nuestro juicio, fundándose en la evidencia practicada. Son así:

"La planta de doce pozos, *antes de establecerse los dos pozos profundos,* producía alrededor de *ochocientos galones por minuto* y, cuando la bomba vieja estaba en mejores condiciones, producía hasta *mil quinientos galones por minuto.*

"Los pozos profundos construídos por la demandada producen de *novecientos a novecientos veinticinco galones por minuto.*

"La bomba vieja que había en los terrenos del demandante tenía un motor de *cincuenta caballos de fuerza* y la bomba que tiene ahora el demandante Torruella tiene un motor de *siete y medio caballos de fuerza.*

"Actualmente con el agua de los dos pozos profundos se riegan *ochenta cuerdas* de la finca de Sucesión J. Serrallés y *once o doce* de la finca del demandante Torruella, que están sembradas de caña.

"Se ha probado, además, que los dos pozos profundos construídos por la demandada, cuando están funcionando, *merman* las aguas que surgen por los pozos instalados en la finca del demandante Torruella.

"Según la declaración del Ingeniero Fernando Sosa, perito del demandante, la bomba de siete y medio caballos de fuerza que fué instalada por el demandante Torruella en su finca y que cubre dos de los siete pozos que quedan en la misma, extrae de esos dos pozos una cantidad de agua de *cuatrocientos o cuatrocientos cincuenta galones por minuto.* Y declaró, además: que cuando funcionaban al mismo tiempo la bomba de la Sucesión J. Serrallés y la bomba del demandante Torruella, la del demandante Torruella daba menos agua; es decir, *una diferencia (merma) de cien galones por minuto.*"

La ley que rige la materia es la de Aguas que es en substancia la misma Ley de Aguas de junio 13, 1879, hecha extensiva a Puerto Rico en 1886—Compilación de 1911, pág. 485 y siguientes—y los artículos que de ella se invocan, dicen, copiados a la letra:

"Artículo 22. Cuando se buscare el alumbramiento de aguas subterráneas por medio de pozos artesianos, por socavones o galerías, el que las hallare e hiciese surgir a la superficie del terreno será dueño de ellas a perpetuidad, sin perder su derecho aunque salgan de la finca donde vieron la luz, cualquiera que sea la dirección que el alumbrador quiera darles mientras conserve su dominio.

"Si el dueño de las aguas alumbradas no constituyese acueducto para conducirlas por los predios inferiores que atraviesan y las dejase abandonadas a su curso natural, entonces entrarán los dueños de estos predios a disfrutar del derecho eventual que les confieren los artículos 5 y 10 respecto de los manantiales naturales superiores, y el definitivo que establece el 10, con las limitaciones fijadas en los artículos 7 y 14.

"Artículo 23.—El dueño de cualquier terreno puede alumbrar y apropiarse plenamente por medio de pozos artesianos y por socavones o galerías las aguas que existen debajo de la superficie de su finca, con tal que no distraiga o aparte aguas públicas o privadas de su corriente natural.

"Cuando amenazare peligro de que por consecuencia de las labores del pozo artesiano, socavón o galería se distraigan o mermen las aguas públicas o privadas destinadas a un servicio público o a un aprovechamiento privado preexistente, con derechos legítimamente adquiridos, el Alcalde, de oficio, a excitación del Ayuntamiento en el primer caso, o mediante denuncia de los interesados en el segundo, podrá suspender las obras.

"La providencia del alcalde causará estado si de ella no se reclama dentro del término legal ante el Gobernador de la provincia, quien dictará la resolución que proceda previa audiencia de los interesados y reconocimiento y dictamen pericial.

Artículo 24. Las labores de que habla el artículo anterior para alumbramientos no podrán ejecutarse a menor distancia de 40 metros de edificios ajenos, de un ferrocarril o carretera ni a menos de 100 de otro alumbramiento o fuente, río, canal, acequia o abrevadero público sin la licencia correspondiente de los dueños, o en su caso del ayuntamiento, previa formación de expediente, ni dentro de la zona de los puntos fortificados sin permiso de la autoridad militar.

"Tampoco podrán ejecutarse estas labores dentro de una pertenencia minera sin previa estipulación de resarcimiento de perjuicios. En el caso de que no hubiera avenencia la autoridad administrativa fijará las condiciones de la indemnización, previo informe de peritos nombrados al efecto."

Para la debida comprensión de la realidad existente en este caso y por tanto para la recta aplicación de la ley, debe tenerse bien presente que el derecho del dueño de una finca a las aguas que corren por el subsuelo de la misma, no es absoluto. "Nuestra legislación positiva", se dice en A. Maura, Dictámenes, seleccionados y clasificados por Miguel Maura Gamazo y José Romero Valenzuela, Tomo II, pág. 403, "no atribuye la vena subterránea al dueño del suelo, tampoco al minero del subsuelo; adjudícala a quien se la apropia con obras de alumbramiento, captándolas, haciéndolas surgir y habilitándolas para el disfrute."

Hace más de treinta años el arrendatario de las fincas colindantes de ambas partes en este pleito alumbró las aguas que corrían por su subsuelo, las captó, las hizo surgir y las habilitó para ser disfrutadas como las disfrutó regando diez y seis cuerdas de la finca del demandante y ciento setenta de la finca de la demandada. Y así continuó el disfrute por muchos años. Terminó el contrato y el arrendatario reintegró a sus arrendadores la posesión material de sus fincas con la valiosa mejora de los pozos en ellas construídos formando una unidad de riego.

Como de hecho ambas fincas siguieron siendo cultivadas bajo una sola dirección, se continuó regándolas sin dificultad. La dificultad surgió cuando la demandada, dueña de una parte y arrendataria del resto de la finca de mayor extensión, actuando por su propio acuerdo, construyó en ella dos nuevos pozos para el disfrute de las aguas y como obtuviera resultado favorable, abandonó los antiguos y continuó regando con los pozos nuevos tanto las tierras cultivadas en su finca como las cultivadas en la finca del demandante que tenía subarrendada.

La construcción de los nuevos pozos se hizo a 18.15 y 34.42 metros del último de los antiguos existentes en la finca del demandante. Como sabemos, la ley ordena que la distancia cuando las labores para el alumbramiento se realizan existiendo otro alumbramiento, no deberá ser menor de cien metros. En tal virtud si dichos nuevos pozos implicaran un nuevo alumbramiento, bastaría simplemente aplicar la ley a los hechos sin más razonamientos para decidir el caso en favor del demandante.

Pero ¿constituye dicha construcción un alumbramiento distinto del realizado por el arrendatario de ambas fincas desde hace más de treinta años? Si esa pregunta puede contestarse en la negativa, entonces la situación cambia por completo y el caso debe resolverse en contra del demandante como lo resolvió la corte sentenciadora.

Volvamos a la ley. "Cuando se buscare el alumbramiento de aguas subterráneas por medio de pozos . . . . el que las hallare . . . . será dueño de ellas a perpetuidad . . . ." dice el art. 22 de la ley transcrito íntegro anteriormente. Aquí el arrendatario de ambas fincas buscó aguas en el subsuelo de las mismas, las halló y se apropió de ellas para regar sus tierras labrantías en la proporción que conocemos. El alumbramiento se hizo al mismo tiempo y al mismo tiempo surgió por consiguiente el derecho de ambos dueños para cuyo beneficio último actuó su arrendatario. Ni el derecho de la demandada es preexistente al derecho del demandante, ni el de éste al de aquélla.

¿Estaban supeditados esos derechos a la obtención de las aguas por los medios usados por el arrendatario o podían emplearse otros a voluntad de los dueños?

A nuestro juicio una vez que las aguas se alumbraron, los medios de utilización de las mismas deben considerarse como algo accesorio sujeto a variación de acuerdo con las necesidades y el progreso de los tiempos. Y siendo ello así, construídos por la demandada los nuevos pozos en sitio contiguo a los antiguos a los efectos de seguir utilizando las aguas del subsuelo de su finca alumbradas al propio tiempo que las del subsuelo de la finca del demandante, la nueva construcción, el nuevo medio de utilización, no puede considerarse como un nuevo alumbramiento, al que deban aplicarse las reglas de la ley tomando como base la preexistencia del derecho del demandante, preexistencia que hemos visto que no existe. Una respuesta negativa se impone, pues, a la pregunta formulada.

Ahora bien ¿puede la demandada a virtud de nuevos medios de utilización, despojar de su derecho al demandante? Claro es que no. ¿Implica lo hecho hasta ahora por la demandada el despojo de ese derecho? Veámoslo.

No se ha demostrado que demandante y demandada regularan por sí mismos la extensión de sus derechos. El antiguo arrendatario común actuó seguramente no pensando en ellos sino en su propio beneficio. Hecho por él el alumbramiento y construídos los pozos, los utilizó para el mayor rendimiento de sus cultivos, pero terminado su contrato, la mejora quedó para los dueños. La misma situación continuó porque el demandante volvió a arrendar su finca que quedó controlada a virtud de subarriendo por la demandada, y el cultivo y el riego siguieron bajo una sola dirección, de modo que nunca hubo una fijación entre las partes del derecho al uso de las aguas alumbradas a la vez hace treinta años en cuanto a su extensión, viniendo en cierto modo a recaer esa fijación en los tribunales de justicia a virtud de este pleito.

Hemos dicho en cierto modo porque entendemos que dada la naturaleza del remedio ejercitado por el demandante, no debe hacerse en definitiva sino incidentalmente a los únicos fines de determinar si hasta ahora se ha demostrado la existencia de un verdadero perjuicio.

Aplicando el principio fundamental relativo al dominio de las aguas del subsuelo que expusimos y lo preceptuado en los artículos de la ley especial sobre la materia invocados por el propio demandante, veremos que el derecho al disfrute ulterior de las aguas alumbradas en cuanto a cantidad, se determina por el todo o la parte que se usare desde el principio y aquí resulta claro que al alumbrarse simultáneamente las aguas en ambas fincas, se usaron para regar diez y seis cuerdas en la del demandante y más de ciento cincuenta en la de la demandada y que así continuó el disfrute—siendo últimamente la proporción doce-ochenta—hasta que surgió el desacuerdo entre las partes, y como resulta claro también a virtud de la propia evidencia introducida por el demandante, que no obstante la merma que se advierte en sus pozos cuando funcionan los pozos profundos de la demandada, la cantidad que obtiene en sólo dos de ellos movidos por bombas de escasa potencia es superior a la que se usó y se ha venido usando para el riego de su finca, precisa concluir que no se ha demostrado la existencia de un perjuicio actual que pueda servir de base a la expedición del *injunction*. Las mismas autoridades citadas por el demandante y apelante—62 C. J. 520 y 521, *Larned* v. *Jenkins*, 169 N. W. 723, 724, 102 Neb. 796—exigen como condición necesaria para el *injunction* la existencia del perjuicio y el perjuicio fué alegado y se sostiene que existe por el demandante.

En cuanto a si los pozos profundos construídos por la demandada pueden llegar a sustraer en el futuro todas las aguas del subsuelo de la finca del demandante, es algo especulativo. Debe existir un perjuicio actual, evidente. Si el caso llegare en la realidad, medios tendrá el demandante de hacer valer su derecho. Hasta ahora lo probado por él

es una merma, perfectamente explicada por tratarse de las mismas aguas subterráneas, que aún deja un margen favorable a su derecho.

Bajo esas circunstancias, no es posible revocar la sentencia recurrida. Se ajusta a los hechos, a la ley y a la jurisprudencia. *El recurso interpuesto contra ella debe en su consecuencia declararse sin lugar, quedando confirmada.*