UNIVERSIDAD DEL TURABO, FUNDACIÓN EDUCATIVA ANA G. MÉNDEZ y el atleta BRIAN WHITEHEAD, ETC., demandantes y recurridos, *v.* LIGA ATLÉTICA INTERUNIVERSITARIA (L.A.I.), su PRESIDENTE, DR. JOSÉ L. MARTÍNEZ PICÓ, ETC., demandados y recurrentes.

*Número:* RE-88-267        *Resuelto:* 14 de junio de 1990

*José J. Velázquez* y *Guillermo Figueroa Prieto*, abogados de los recurrentes; *Andrés E. Salas Soler*, abogado de los recurridos.

## SENTENCIA

Luego de una serie de trámites procesales, que incluye un recurso de *certiorari* ante este Tribunal, el foro de instancia, el 2 de junio de 1988, dictó *injunction* permanente mediante el cual prohibió a la Liga Atlética Interuniversitaria (L.A.I.), a su presidente Dr. José L. Martínez Picó y a la Comisionada de Deportes, Sra. Criselia Ríos de Vázquez, impedir que Brian Whitehead, estudiante de la Universidad del Turabo —de éste ser académicamente elegible— compitiera en las Justas de la Liga Atlética Interuniversitaria (Justas L.A.I.) de 1989. Además, concedió mil dólares ($1,000) en honorarios de abogado.

La controversia giró alrededor de la determinación de elegibilidad del estudiante Whitehead. Éste compitió por la Universidad del Turabo en las Justas L.A.I. de 1987 pero en 1988 su elegibilidad fue impugnada por la Universidad Interamericana (U.I.A.). Ésta alegó que dicho estudiante ya había participado durante cuatro (4) años en torneos atléticos universitarios en o fuera de Puerto Rico, lo cual lo hacía inelegible.

Whitehead fue declarado inelegible. La prueba documental presentada ante la Comisionada de Deportes y la Comisión de Elegibilidad de la L.A.I. fue conflictiva.

No conforme con la determinación de no elegibilidad, la Universidad del Turabo presentó una petición de *injunction* provisional, preliminar y permanente ante el Tribunal Superior, Sala de Caguas, a pesar de que el Reglamento General de la L.A.I. establecía un procedimiento de revisión ante la Junta Administrativa y la Junta de Gobierno de la L.A.I. Así las cosas, y mientras se tramitaba el caso, en abril de 1988 se celebraron las Justas Intercolegiales sin la participación de Whitehead.

El 2 de junio de 1988 el tribunal decretó *injunction* permanente con efecto prospectivo para las Justas L.A.I. de 1989.

La parte demandada recurrió ante este Tribunal para alegar que no procedía el *injunction* por ser éste académico, especulativo y contrario a la doctrina y que no existían circunstancias que ameritaran intervenir con la decisión de una organización privada. Decidimos revisar y expedimos el auto.

Conforme los principios que rigen la expedición del recurso extraordinario del *injunction* permanente bajo las circunstancias antes reseñadas, éste no procedía. Los demandantes no probaron que hubo un daño irreparable y la ausencia de un remedio adecuado en ley. *Martínez v. P.R. Ry. Light & Power Co.*, 18 D.P.R. 725 (1912); *Franco v. Oppenheimer*, 40 D.P.R. 153 (1929); *A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903 (1975). "La regla general es al efecto de que un [*injunction*] debe concederse o denegarse a base de los hechos y circunstancias existentes a la fecha de la vista del recurso." *Trigo Hnos. v. Sobrino De Izguierdo*, 72 D.P.R.449, 465 (1951). Es "'el estado de cosas existente al momento del pleito, más bien que el existente al tiempo de iniciársele, lo que es pertinente y lo que sirve de base al remedio solicitado'". *Las Monjas Racing Corp. v. Comisión Hípica*, 57 D.P.R. 522, 524 (1940). Véanse, además: *Trigo Hnos. v. Sobrino De Izguierdo*, supra; *Torruella v. Sucn. J. Serrallés*, 57 D.P.R. 280 (1940).

*Se dicta sentencia que revoca la dictada por el Tribunal Superior, Sala de Caguas, el 2 de junio de 1988 y se desestima la petición de "injunction" permanente.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General Interino. El Juez Asociado Señor Rebollo López no intervino. La Juez Asociada Señora Naveira de Rodón emitió voto particular y de conformidad.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Voto particular y de conformidad emitido por la Juez Asociada Señora Naveira De Rodón.

Hoy nos toca resolver si procede o no dictar una orden de *injunction* contra una asociación privada cuando los afiliados-peticionarios aún no han agotado los procedimientos internos provistos por dicha entidad para dilucidar la controversia de que se trata.

I

*Los hechos*

El 2 de junio de 1988 el Tribunal Superior, Sala de Caguas, dictó *injunction* permanente mediante el cual prohibió a la Liga Atlética Interuniversitaria (L.A.I),[1] a su presidente Dr. José L. Martínez Picó y a la Comisionada de Deportes, Sra. Criselia Ríos de Vázquez (Comisionada de Deportes), impedir que el estudiante de la Universidad del Turabo, Brian Whitehead —de éste ser académicamente elegible— participara en las Justas de la Liga Atlética Interuniversitaria (Justas L.A.I.) de 1989. También condenó a los demandados al pago de mil dólares ($1,000) en

---

[1] La Liga Atlética Interuniversitaria (L.A.I.) es una entidad privada, sin fines de lucro, cuya función y propósito es disponer y organizar actividades deportivas entre centros docentes de estudios postsecundarios del país. Esta organización, fundada en 1929, agrupa hoy diez (10) instituciones educativas post secundarias: Universidad de Puerto Rico, Recinto de Mayagüez, Universidad Interamericana, Pontificia Universidad Católica, Colegio Universitario de Cayey, Universidad del Turabo, Colegio Universitario de Humacao, Universidad del Sagrado Corazón, Colegio Universitario Tecnológico de Bayamón y Colegio Tecnológico de Arecibo.

honorarios de abogado. No conforme, éstos presentaron recurso de revisión.

Con anterioridad a esta sentencia —el 13 de abril de 1988— la Comisión de Elegibilidad de la L.A.I., con votación de uno a favor, uno en contra y uno que no emitió su voto, confirmó la determinación de inelegibilidad del estudiante de la Universidad del Turabo, Brian Whitehead, hecha por la Comisionada de Deportes. Los hechos que culminaron en esta decisión comenzaron cuando en 1986 Whitehead se matriculó como estudiante en la Universidad del Turabo.

Whitehead inició su vida universitaria en 1980 en *Ball State University* (*Ball State*), Muncie, Indiana. Durante el año académico 1980–1981 participó como miembro del equipo de pista y campo de dicha universidad en las Justas Universitarias de la *Mid-American Conference*. En la temporada de 1981–1982, por ser académicamente inelegible, compitió como independiente (*unattached*).(2) En 1982–1983 pudo competir nuevamente para Ball State.

Una vez matriculado en la Universidad del Turabo, compitió en las Justas L.A.I. de 1987. Para las Justas L.A.I. de 1988, la Universidad Interamericana (U.I.A.) impugnó la elegibilidad del atleta ante la Comisionada de Deportes. La U.I.A. alegó que Whitehead había participado durante cuatro (4) años en torneos atléticos universitarios en o fuera de Puerto Rico y que, por lo tanto, no era elegible.(3)

La prueba presentada ante la Comisionada de Deportes y la Comisión de Elegibilidad de la L.A.I. fue conflictiva. Algunos de los documentos suscritos por funcionarios de la *Mid-American Conference* y la *Ball State* señalaban que Whitehead había

---

(2) Sobre este hecho surgió evidencia conflictiva al presentarse el caso ante la Comisionada de Deportes y la Comisión de Elegibilidad de la L.A.I.

(3) El Cap. VIII, Sec. 3 del Reglamento General de la L.A.I. —Reglamento Técnico de la L.A.I.— dispone: "podrán participar en competiciones atléticas auspiciadas por la LAI aquellos estudiantes-atletas que reúnan los siguientes requisitos:

. . . . . .

"Sec. 3. Que su participación no exceda de un máximo de cuatro (4) años en torneos atléticos universitarios en o fuera de P.R. . . . . ."

competido por tres (3) años consecutivos representando a la Universidad, mientras otros aclaraban que una de sus participaciones la había efectuado de forma independiente. Ante esa situación se declaró inelegible a Whitehead.

No conforme con esta determinación, la Universidad del Turabo, en vez de acudir ante la Junta Administrativa y la Junta de Gobierno de la L.A.I., según los procedimientos establecidos en el Reglamento General de la L.A.I., presentó una petición de *injunction* provisional, preliminar y permanente ante el Tribunal Superior, Sala de Caguas.(4) El tribunal de instancia acogió los planteamientos de la parte demandante y el 14 de abril de 1988 dictó entredicho provisional mediante el cual se ordenó la inclusión de Whitehead en la lista de los atletas que participarían en las Justas L.A.I. de ese año. Esta orden la revocamos mediante Sentencia de 15 de abril de 1988.(5) El caso fue devuelto al tribunal de instancia para que continuaran los procedimientos de forma compatible con la sentencia emitida. Las Justas L.A.I. se celebraron durante los días 15 y 16 de abril de 1988 sin la participación de Whitehead.

Después de varias suspensiones a solicitud de las partes, se señaló vista en su fondo para el 2 de mayo de 1988. En esa ocasión la parte demandante presentó su prueba, mientras que la parte demandada pidió se pospusiera la presentación de la suya arguyendo que las partes tratarían de llegar a una transacción que dispusiera del caso. Se fijó fecha para la vista. En esa ocasión, las partes informaron al tribunal que no habían podido llegar a un acuerdo. La parte demandada se negó a presentar su prueba. Alegó que mientras se encontraban reunidos en cámara, el Juez Superior designado, Hon. Luis V. Castro, les informó que ya tenía escrita la parte dispositiva de la sentencia. Más tarde, en Sala, el

---

(4) El Cap. V del Reglamento General de la L.A.I. dispone:

"Art. 31, Sec. 1: Será el cuerpo de legislación inicial que recomendará la implementación [sic] de los principios y propósitos de la LAI a la J.G.

. . . . . . . .

"Sec. 9. 'Será el recurso de última instancia de la LAI.'"

(5) La orden se revocó por haberse incumplido con las disposiciones de la Regla 57.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III (*Certiorari* Núm. CE-88-203).

Juez leyó para récord la parte de la sentencia que tenía escrita.(6) Ante esta situación, los demandados solicitaron que se notificara la sentencia lo antes posible para así poder recurrir en revisión ante este Tribunal.

La sentencia declaró con lugar el *injunction* permanente con efecto prospectivo para las Justas de 1989, "de manera que se asegure la participación del estudiante-atleta, Brian Whitehead, si es académicamente elegible". Solicitud de revisión, Anejo B, pág. 16. En ella también se expresó que "[e]l Tribunal [entendía] que el Reglamento de la LAI [era] un documento amplio, eficaz y autónomo. La Junta de Gobierno deb[ía] tener el poder final de elegibilidad cuando no se hayan observado las reglas provistas de manera que no se afecten los derechos de estudiantes-atletas ante la inescrupulosidad de personas llamadas a respetar dicho reglamento". Íd.

Inconforme, la parte demandada presentó recurso de revisión. Alegó que no procedía expedir el *injunction* porque éste resultaba académico, especulativo y contrario a la doctrina y que no existían circunstancias que ameritaran intervenir con la decisión de una organización privada.(7)

Por estar íntimamente relacionados, discutiremos los errores señalados conjuntamente.

---

(6) Para todos los fines prácticos, la parte leída disponía del recurso.

(7) También planteó que la conducta del juez constituyó una violación al debido proceso de ley. Por la conclusión a que llegamos, no es necesario discutir este error. Sin embargo, quisiéramos señalar que resulta contrario a la mejor práctica y a las disposiciones estatutarias relativas a estos procedimientos el que el juez de instancia haya adjudicado la controversia antes de oir la prueba de los demandados. 11 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 2941 (1983); Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

El debido proceso de ley es de naturaleza circunstancial y pragmática. *Pueblo v. Andreu González*, 105 D.P.R. 315 (1976). Su apreciación debe hacerse de acuerdo con los hechos de cada caso en particular. En relación con el derecho a ser oído, debe considerarse que éste incluye, en casos como el de autos, una oportunidad de presentar evidencia. *Pagán v. Registrador*, 62 D.P.R. 594 (1943).

## II

*Recurso de "injunction" —Principios Generales*

Reiteradamente hemos resuelto que el *injunction*, por su naturaleza de recurso extraordinario, se expide con carácter discrecional y en ausencia de otro remedio más eficaz para vindicar el derecho que se persigue proteger. En cuanto a sus modalidades de entredicho provisional e *injunction* preliminar, hemos expresado que este recurso, "que desde su temprana etapa de entredicho está concediendo un remedio que en el procedimiento usual ordinario no se alcanza hasta vencer en juicio, debe expedirse con sobriedad y sólo ante una demostración de clara e intensa violación de un derecho". *A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903, 906 (1975).

Acorde con la naturaleza del recurso, hemos adoptado criterios que sirven de guía a los tribunales de instancia en su tarea de decidir si conceden el remedio en las primeras dos (2) etapas. Entre los factores que se deben ponderar se encuentran: "la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*; su irreparabilidad o la existencia de un remedio adecuado en ley; la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; la probabilidad de que la causa se torne en académica de no concederse el *injunction* y, sobre todo, el posible impacto sobre el interés público del remedio que se solicita". *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200, 202 (1975). Véase, además, *Cobos Liccia v. DeJean Packing Co., Inc.*, 124 D.P.R. 896 (1989).

El principio medular que rige la concesión de este remedio extraordinario, que está inexorablemente atado a la equidad, es la existencia de una amenaza real de sufrir algún daño para el cual no se tiene un remedio adecuado en ley. 11 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 2942 (1983). Por eso, mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable. *Martínez v. P.R. Ry. Light & Power Co.*, 18 D.P.R. 725 (1912); *Franco v. Oppenheimer*,

40 D.P.R. 153 (1929); *A.P.P.R. v. Tribunal Superior*, supra. Es decir, que la determinación de la irreparabilidad del daño se ha de evaluar en gran medida a la luz de si existe un remedio adecuado en ley. Véase *Cruz v. Ortiz*, 74 D.P.R. 321, 328 (1953), y casos allí citados. No obstante, la determinación de lo que constituye un remedio apropiado en ley y, por ende, daño irreparable, va a depender de los hechos y las circunstancias de cada caso en particular. Véanse: *Martínez v. P.R. Ry. Light & Power Co.*, supra; *Loíza Sugar Company v. Hernaiz y Albandoz*, 32 D.P.R. 903 (1924); *Chardón v. Laffaye*, 43 D.P.R. 650 (1932); *A.P.P.R. v. Tribunal Superior*, supra; *Smith v. Western Elec. Co.*, 643 S.W.2d 10 (1982). Véase, además, D. Rivé Rivera, *El Injunction en Puerto Rico*, 53 (Núms. 2–3) Rev. Jur. U.P.R. 341, 346–347 (1984).

De otra parte, además de los requisitos señalados, antes de emitir una orden de *injunction* permanente los tribunales también tienen que tomar en consideración cualquier cambio entre las circunstancias presentes cuando se hizo la solicitud y aquellas que prevalezcan al momento en que se va a dictar la orden. "La regla general es al efecto de que un [*injunction*] debe concederse o denegarse a base de los hechos y circunstancias existentes a la fecha de la vista del recurso." *Trigo Hnos. v. Sobrino De Izquierdo*, 72 D.P.R. 449, 465 (1951). "'[E]l estado de cosas existente al momento del pleito, más bien que el existente al tiempo de iniciársele, [es] lo que es pertinente y lo que sirve de base al remedio solicitado.'" *Las Monjas Racing Corp. v. Comisión Hípica*, 57 D.P.R. 522, 524 (1940). Véanse, además: *Trigo Hnos. v. Sobrino De Izquierdo*, supra; *Torruella v. Sucn. J. Serrallés*, 57 D.P.R. 280 (1940). Por tal razón, los tribunales tienen que estar atentos a que su intervención no se convierta en inmeritoria en la eventualidad de que surja un remedio que el promovente antes no tenía o no le era del todo eficaz y adecuado.

Se ha dicho que en aquellos casos en que un tribunal haya emitido el recurso cuando las circunstancias o estado de derecho que dieron lugar a su expedición varían, el recurso no puede sobrevivir tales cambios. "El remedio no se perpetúa más allá de su razón genésica. Los tribunales nunca deben ignorar cambios de

relieve en la ley o en las circunstancias que sostienen el *injunction* a riesgo de que éste se convierta en 'instrumento de injusticia'." *A.P.P.R. v. Tribunal Superior*, supra, pág. 909. "[E]l *injunction* es un remedio dinámico sobre el cual los tribunales siempre conservan jurisdicción para dejarlo sin efecto o modificarlo a favor o en contra del que resulta obligado." *Noriega v. Gobernador*, 122 D.P.R. 650, 688 (1988).

Conforme a todo lo anterior los tribunales, al expedir un auto de *injunction*, tienen que determinar que no existe un remedio adecuado en ley tanto al momento en que se solicita el remedio como cuando se celebra la vista en su fondo. Según hemos apuntado, hay que prestar particular atención a cualquier cambio en los hechos o circunstancias ocurrido durante el período transcurrido desde que se solicita la orden hasta que se expide, y aun después de expedido. Véase *Noriega v. Gobernador*, supra.

Los factores que se deben tomar en consideración para emitir el recurso de *injunction* permanente son: si el demandante ha prevalecido en un juicio en sus méritos; si el demandante posee algún remedio adecuado en ley; el interés público envuelto y el balance de equidades. *State Ex. Rel. Guste v. Lee*, 635 F. Supp. 1107, 1125 (1986). Al igual que en las etapas anteriores, "[e]l requisito esencial en un *injunction* permanente es la ausencia de remedio adecuado en ley". (Traducción nuestra.)[8] *Lewis v. S.S. Baune*, 534 F.2d 1115, 1124 (5to Cir. 1976), cita con aprobación a *Wright and Miller*, supra, Vol. 11, Sec. 2944, pág. 401 (1973).

Por lo tanto, aun después de un juicio en sus méritos, los tribunales deben tomar en consideración la existencia o la ausencia de algún otro remedio adecuado en ley que evite el uso del *injunction* permanente antes de conceder el recurso solicitado.

---

[8] "[N]o *injunction*, not even one sought after a full scale trial, is to be granted unless the legal remedy is shown to be inadequate." D.B. Dobbs, *Handbook on the Law of Remedies*, Minnesota, West Publishing Co., 1973, pág. 108.

## III

*Las asociaciones u organizaciones privadas, la doctrina de agotar remedios y el recurso de "injunction"*

Como corolario al carácter de recurso extraordinario y a los requisitos de ausencia de remedio adecuado en ley y daño irreparable a que hemos hecho mención, el estado de derecho vigente exige que —salvo la existencia de un agravio de patente intensidad que reclame urgente reparación— se agoten los remedios existentes en el cauce administrativo antes de que proceda su utilización. Dentro del campo administrativo priva la norma de que los tribunales han de mantener una actitud de deferencia al cauce que provea la agencia para la solución de las controversias que se le presenten. Ante la ausencia de una clara demostración de daño irreparable y la ausencia de remedio adecuado, deben prevalecer las doctrinas de jurisdicción primaria y el agotamiento de recursos administrativos. *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987); *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977); *Mari v. Vicéns*, 67 D.P.R. 473 (1947).

En el caso de autos no estamos frente a una agencia administrativa. La L.A.I. es una organización de carácter privado. Sin embargo ésta, al igual que las organizaciones de carácter público, posee un reglamento de funcionamiento interno que establece un procedimiento para cuestionar las decisiones institucionales que afectan a los afiliados. En *Hernández v. Asoc. Hosp. Del Maestro*, 106 D.P.R. 72, 80 (1977), expresamos que en relación con una institución privada, en esa ocasión un hospital, la parte demandante tenía también que agotar los remedios internos a su disposición antes de recurrir a los tribunales. Las decisiones institucionales de entidades privadas también merecen deferencia por parte de los tribunales, especialmente aquellas que por su naturaleza tienen un peritaje (*expertise*) sobre la materia objeto de la controversia.

En términos generales, en lo que se refiere a disputas internas entre los miembros de determinada organización, ya sea ésta incorporada o no, en ausencia de una demostración de que se

han agotado los procedimientos internos de la organización o de que existe un agravio de naturaleza tal que requiera urgente reparación, no procede la intervención judicial mediante el recurso extraordinario del *injunction*. "La regla general es que aun cuando un miembro de una asociación puede recurrir a los tribunales para corregir una acción ilegal de la asociación en cuestión, debe quedar claro que antes de acudir a los tribunales dicho miembro agotó todos los remedios disponibles dentro de la asociación." (Traducción nuestra.) *Costa v. La Luna Servante et. al.*, 49 So. 2d 672, 673 (1950); *Rodyk v. Ukrainian Autocephalic Orthodox Church*, 296 N.Y. S.2d 496 (1968); *Wilson v. McCune, Fla.*, 222 So. 2d 230 (1969); *Swital v. Real Estate Com'r*, 254 P.2d 587 (1953); *State Ex Rel. W.V.A. Second Sch. Act. Com'n, v. Oakley*, 164 S.E.2d 775 (1968); J.C. Weistart y C.H. Lowell, *The Law of Sports*, Nueva York, The Bobbs-Merrill Co. Inc., 1979, Sec. 2.19, pág. 168.

La relación entre una organización voluntaria privada y sus miembros es contractual y, al unirse a ella, éstos acuerdan someterse y regirse por sus reglas y reglamentos y *asumen las obligaciones incidentales a esa membresía.* Arts. 1206 y 1210 del Código Civil, 31 L.P.R.A. secs. 3371 y 3375;(9) *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989);(10) *Selosse v. Fund. Educ.*

---

(9) Los Arts. 1206 y 1210 del Código Civil disponen, respectivamente:

"El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio." 31 L.P.R.A. sec. 3371.

"Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley." 31 L.P.R.A. sec. 3375.

(10) En relación con el Art. 1210 del Código Civil, *supra*, en *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 345-346 (1989):

"El Art. 1210 de nuestro Código Civil, 31 L.P.R.A. sec. 3375, dispone que los contratos, una vez perfeccionados, obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, al uso y a la ley. Más allá de su literalidad, este precepto se proyecta 'no sólo como complemento de lo convenido[,] sino como reguladores de los efectos que, durante la vigencia del pacto, puedan y deban producir determinados acaecimientos y a la reacción de los propios contratantes; y por su carácter subjetivo y espiritual, el más destacado de tales factores, cuya presencia ya exige la ley en el mismo acto de la prestación del consentimiento so pena de que el contrato adolezca de algún vicio capaz de invalidarle,

*Ana G. Méndez*, 122 D.P.R. 534 (1988). Véase, además, *Jorgesen Realty, Inc. v. Box*, 701 P.2d 1256, 1257 (Colo. App. 1985), y casos allí citados. Los tribunales consistentemente han resuelto que no intervendrán con las determinaciones de una asociación privada en ausencia de alegaciones de fraude, arbitrariedad, irrazonabilidad, discrimen o corrupción —*Selosse v. Fund. Educ. Ana G. Méndez*, supra; *State v. Judges of Court of Common Pleas*, 181 N.E.2d 261 (1962); *Lough v. Varsity Bowl, Inc.*, 243 N.E.2d 61 (1968); *Tennessee Secondary Sch. Athletic Ass'n v. Cox*, 425 S.W.2d 597 (1968); *Robinson v. Illinois High School Association*, 195 N.E.2d 38 (1963), *Sanders v. Louisiana High School Athletic Ass'n*, 242 So. 2d 19 (1970); *Scott v. Kilpatrick*, 237 So. 2d 652 (1970)— y que harán cumplir los contratos a tenor con los términos de lo acordado. Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994.(11) Véanse, además: *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345 (1984); *Rivera v. Samaritano & Co., Inc.*, 108 D.P.R. 604 (1979); *Olazábal v. U.S. Fidelity, Etc.*, 103 D.P.R. 448 (1975). Si la decisión está en armonía con los fines y propósitos que persigue la institución, los tribunales deben respetar su criterio y darle deferencia a la decisión tomada. Sin embargo, se justifica la intervención judicial cuando la entidad privada impone controles que carecen de fundamento adecuado con los fines legítimos de la organización. R. Waicukauski, *Law and Amateur Sports*, Bloomington, Indiana U. Press, 1982, págs. 226–229. Véanse, además: *Justice v. National Collegiate Athletic Ass'n*, 577 F. Supp. 356 (1983); *English v. Nat. Collegiate Ath. Ass'n*, 439 So. 2d 1218 (1983); *Butts v. Nat. Collegiate Athletic Ass'n*, 751 F.2d 609 (1984); *Ala. High School Athletic Ass'n v. Medders*, 456 So. 2d 284 (1984); *Snow v. New Hampshire Interscholastic, Etc.*, 449 A.2d 1223 (1982).

---

es el de la "buena fe"'. . . . J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, págs. 439–440."

(11) El Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994, dispone:
"Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos."

## IV

*Análisis de los hechos de acuerdo con las normas de derecho aplicables*

Conforme los principios antes reseñados, el *injunction* solicitado no procedía. Los demandantes no agotaron todos los remedios que la L.A.I. tenía disponibles para que sus afiliados cuestionaran las decisiones adversas sobre la elegibilidad de un estudiante para participar en las Justas L.A.I. Esta era una decisión dispuesta dentro del peritaje especial de dicha entidad para la organización de actividades atléticas. Ante esas circunstancias, éstos no adujeron prueba sobre la existencia de un agravio de patente intensidad que requiriera una urgente reparación y que justificara obviar el agotamiento del trámite institucional interno. Además, no demostraron que hubo daño irreparable y ausencia de recurso adecuado en ley al momento de celebrarse la vista en su fondo.

El foro de instancia no podía ignorar que, a la fecha de la vista, las Justas L.A.I. ya se habían celebrado. La inminencia del alegado daño irreparable, de haber existido en algún momento, ya había desaparecido. Esto hacía aún más apropiado que fuera la L.A.I., a través de sus procedimientos internos, quien dilucidara los planteamientos de los demandantes. El estado de hechos existente al momento de la vista había variado sustancialmente del que prevalecía cuando se presentó la petición de *injunction*. Al momento de la vista en su fondo, la demandante tenía tiempo suficiente para dilucidar ante la L.A.I. sus alegaciones. El propio tribunal de instancia reconoció en su sentencia que la L.A.I. poseía un reglamento eficaz y que la Junta Administrativa era la que debía tener el poder final sobre el asunto de elegibilidad. La intervención judicial mediante el recurso extraordinario de *injunction* obviamente no se justificaba.

En virtud de todo lo antes expuesto, revocaría la sentencia emitida por el foro de instancia el 2 de junio de 1988.