# 2001 DTA 129

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE CAROLINA-FAJARDO**

GILBERTO BONILLA VICENTE
Apelado

v.

FEDERACION DE BEISBOL AFICIONADO, INC., ETC.
Apelantes

Núm. KLAN-01-00161

San Juan, Puerto Rico, a 9 de marzo de 2001

Panel integrado por su Presidente, el Juez Miranda De Hostos,
la Jueza Hernández Torres y el Juez Martínez Torres

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Tribunal de Primera Instancia emitió una sentencia de *injunction* permanente, donde le ordenó a la parte apelante, la Federación de Béisbol Aficionado (FBA), que permitiera al apelado Gilberto Bonilla Vicente, ejercer como apoderado del equipo de béisbol de Cayey.

Inconforme con tal dictamen, la FBA acude ante nos alegando, en síntesis, que incidió el foro de instancia al emitir su dictamen: primero, al aplicar disposiciones constitucionales a una entidad privada y no seguir el procedimiento dispuesto por el Reglamento de la FBA; segundo, al convertir la vista sobre el *injunction* preliminar en la vista de *injunction* permanente y al conceder el remedio sin que se probara que se había ocasionado daño irreparable; y tercero, al no aplicar la doctrina de que se tenía que agotar los remedios reglamentarios internos de la FBA.

Mediante resolución emitida el 22 de febrero de 2001 y luego de evaluar la posición del apelado Bonilla Vicente, ordenamos la paralización de la orden de *injunction* permanente emitida por el tribunal de instancia, fijamos una fianza y pautamos el trámite apelativo del recurso presentado. De dicho dictamen la parte apelada acudió ante el Tribunal Supremo, el cual, mediante resolución de 27 de febrero de 2001, lo declaró no ha lugar en esta etapa del procedimiento. (Resolución CC-2001-142.)

Cumplido el trámite apelativo, se revoca la sentencia apelada y se desestima la demanda solicitando el remedio de *injunction* permanente, por los siguientes fundamentos de derecho. Veamos.

# I

El 22 de enero de 2001, el apelado Gilberto Bonilla Vicente presentó demanda ante el Tribunal de Primera Instancia, Sala Superior de Carolina, de *injunction*, sentencia declaratoria y daños y perjuicios contra la FBA, pues ésta alegadamente le había denegado en forma discriminatoria, arbitraria e ilegal, ser apoderado de la franquicia del equipo de béisbol de Cayey.

Alegaba que tal actuación le había causado daños irreparables a su reputación y pérdidas económicas, por lo cual solicitaba entre otros remedios, que se emitiera una orden de *injunction* permanente a los fines de que la FBA permitiera que el apelado fuera el apoderado de la referida franquicia de béisbol de Cayey.

Para sustentar su posición alegaba que él era colaborador de dicha franquicia de béisbol, que le había prestado $15,000.00 para costear los gastos en el último año y que el Alcalde, la Asamblea Municipal y líderes deportivos del pueblo de Cayey lo respaldaban, lo cual había creado una *"[e]xpectativa legítima de ser nominado y aceptado apoderado del equipo de Cayey"*. (Demanda, Alegación Núm. 9, Ap. 7, pág. 76.)

Previamente, el 11 de agosto de 2000, el señor Benigno Figueroa había presentado su renuncia como apoderado del equipo de béisbol de Cayey. La Junta de Directores de la FBA pospuso la referida renuncia a solicitud del propio Benigno Figueroa en la reunión celebrada el 12 de noviembre de 2000.

Durante dicho período, el apelado Gilberto Bonilla Vicente comenzó a expresar públicamente su interés en ser apoderado del equipo de Cayey y recibió el endoso del Alcalde de dicho pueblo, la Asamblea Municipal y otros líderes deportivos. Entre varias de las expresiones públicas realizadas por el apelado en un diario de circulación general, se reportó una noticia donde éste aparecía con el dirigente-jugador del equipo de béisbol de Yabucoa, Efraín García. En dicho reportaje, el apelado anunciaba que Efraín García sería contratado como el dirigente-jugador del equipo de Cayey y se mostraba la camiseta con el número 27 que utilizaría. Para esa fecha, Efraín García aparecía como reserva del equipo de Yabucoa en donde había jugado por los últimos 20 años. (Ap. 6, págs. 73-74.)

En reunión celebrada el 14 de enero de 2001 por la Junta de Directores de la FBA, se rechazó al apelado como apoderado de la franquicia de Cayey, todo ello entre otras razones porque el apelado, aún sin ser miembro de la FBA y sin su permiso, había gestionado reclutar a un jugador de otro equipo, en particular a Efraín García. Dicha conducta que se conoce comúnmente como *"pirateo"*, está expresamente prohibida y sancionada por el Art. XVI, Inciso 7 del Reglamento de la FBA. En su dictamen, la FBA estimó que tal conducta era contraria a los mejores intereses de la organización, lo cual imposibilitaba a Gilberto Bonilla Vicente ser apoderado de un equipo, según lo prescribe su Reglamento.

Surge del expediente, lo cual no ha sido rebatido, que ni el apelado Gilberto Bonilla Vicente, ni el equipo de Cayey acudieron al Tribunal Apelativo y de Arbitraje del Comité Olímpico de Puerto Rico (TAAD) a revisar tal dictamen de la FBA, sino que el apelado instó el recurso legal antes mencionado en el Tribunal de Primera Instancia, Sala Superior de Carolina. Luego del trámite correspondiente donde se consolidaron la vista sobre el *injunction* preliminar y permanente, dicho foro resolvió y ordenó a la FBA que se aceptara por un período probatorio de un (1) año al apelado como apoderado del equipo de béisbol de Cayey. La parte apelada reconoce en su alegato y en la moción conjunta de 26 de febrero de 2001, que tanto la prueba documental como testifical se refleja *"[c]laramente en las determinaciones de hechos contenidos en la sentencia del tribunal a quo"*. (Alegato, pág. 2.) Por lo tanto, la ausencia de presentar documentos alegadamente esenciales en el apéndice del recurso no se sostiene.

De tal dictamen es que se acude ante nos.

## II

Resumidos los hechos que dan lugar a la controversia presentada, procedemos a discutir la norma jurídica que rige la misma.

## A

Principios generales sobre el recurso de *injunction*

La Regla 57 de Procedimiento Civil, dispone sobre el procedimiento de naturaleza extraordinaria que constituye el *injunction*, el cual se concede bajo criterios de discreción judicial y en ausencia de otro remedio en ley, para vindicar el derecho que se persigue proteger. 32 L.P.R.A. Ap. III; *P.R. Telephone Co. v. Tribunal Superior,* 103 D.P.R. 200, 202 (1975); *Pérez Vda. de Muñiz v. Criado,* opinión de 19 de junio de 2000, **2000 J.T. S. 105**, pág. 1366. (Casos citados.)

Nuestro más alto foro ha sido enfático al expresar que el *injunction,* por su naturaleza especial, debe expedirse con sobriedad y sólo ante una demostración de clara e intensa violación de un derecho. *A.P.P.R. v. Tribunal Superior,* 103 D.P.R. 903, 906 (1975); *E.L.A. v. Asociación de Auditores,* opinión de 11 de marzo de 1999, **99 J. T.S. 25**, pág. 664. (Casos citados.)

Para ello, los tribunales de instancia deben considerar entre otros factores: (1) la naturaleza de los daños que puedan ocasionarse a las partes de concederse o denegarse el *injunction*; (2) irreparabilidad del daño o la existencia de otro remedio en ley; (3) la probabilidad de que el promovente prevalezca eventualmente al resolverse el caso en su fondo; (4) la probabilidad de que la causa se convierta académica de no concederse; y (5) de mayor importancia, el posible impacto sobre el interés público del remedio que se invoca y solicita. Peña v. *Federación de Esgrima de P.R.,* 108 D.P.R. 147, 154 (1978); *Misión Industrial v. Junta de Planificación,* opinión de 21 de marzo de 1997, **97 J.T.S. 34**, pág. 731. (Casos citados.)

Recae sobre el que promueve el remedio interdictal, el peso de la prueba para mover la discreción del tribunal de instancia a concederlo. Todo ello, pues no se debe perder de perspectiva que el remedio de *injunction,* por ser extraordinario, no se debe conceder si existe otro remedio ordinario en ley. *P.R. Telephone Co. v. Tribunal Superior, supra,* pág. 202. Además, se ha reconocido por nuestro más alto foro que el *injunction* no es el remedio apropiado para obligar al pago de una deuda. *Peña v. Vergne de la Concha,* 37 D.P.R. 285, 289 (1927). (No hay casos recientes.)

## B

El Reglamento de la FBA y los procedimientos apelativos ante el Comité Olímpico de Puerto Rico

La FBA es una organización que se dedica a desarrollar el béisbol aficionado, auspiciando la celebración de torneos anuales en nuestro país y está afiliada al Comité Olímpico de Puerto Rico. Como parte de su

organización, la FBA tiene su reglamento el cual dispone sobre los requisitos para formar parte de la misma, en particular para ser apoderado de un equipo de béisbol. Para ser apoderado de una franquicia debe tener entre otros requisitos, el gozar de buena reputación en la comunidad y cumplir, *"[c]on aquellas condiciones que se exijan por esta constitución o Reglamento"*. Cap. III, Art. III, Reglamento de la FBA.

Sobre la conducta y proceder de cualquier miembro de la FBA, se dispone en el Reglamento que:

*"Cualquier equipo -superior, juvenil, etc.- de nuestra institución que a través de un apoderado, co-apoderado, dirigente, coach, entrenador, ayudante o colaborador, bien sea personalmente o a través de otro, por escrito, llamada telefónica, conversación personal o cualquier otro modo intervenga con un participante o directivo perteneciente a otro equipo para que le firme un convenio, gestione su licenciamiento, practique con otro equipo, etc., sin tener el permiso escrito correspondiente, tal equipo y persona quedarán automáticamente suspendidos. Una vista deberá celebrarse dentro de los diez días próximos a la fecha de la suspensión.*

*La persona y el equipo que así actúe, quedarán impedidos de adquirir los servicios del o de los participantes con los que ilegal e impropiamente intervino, por un término de tres años."*

Art. XIV (A) (7), Reglamento y Constitución de la FBA.

Esta disposición del reglamento prescribe y sanciona específicamente la práctica conocida como *"pirateo"*, entre los miembros de la federación. Todo ello con el fin de lograr el mejor funcionamiento de la organización y de los torneos que auspicia, evitando dicha práctica.

De otra parte, la política pública del Estado Libre Asociado de Puerto Rico le reconoce al Comité Olímpico y a las federaciones deportivas en la Ley Orgánica del Departamento de Recreación y Deportes, la autonomía para que se rijan por sus propios reglamentos y determinaciones *"[s]in la intervención, control o supervisión del Gobierno de Puerto Rico o de sus gobiernos municipales"*. Arts. 2 y 7, Ley Núm. 126 de 13 de junio de 1980, según enmendada; 3 L.P.R.A. secs. 442a(d) y 442f(q). Todo ello con el fin de contribuir al desarrollo del deporte promovido por la ciudadanía y las organizaciones privadas con el máximo de autonomía deportiva, sin inherencia alguna de la esfera gubernamental. *Id.*

La Constitución y Reglamento del Comité Olímpico de Puerto Rico dispone que para canalizar cualquier controversia deportiva-federativa se crea el Tribunal Apelativo y el Arbitraje Deportivo (TAAD), y se adoptan las reglas que regirán tales procesos apelativos sobre asuntos deportivos. Cap. I, Art. 1.1.

Cualquier asunto deportivo no técnico que se refiera a la elegibilidad para participar en actividades deportivas federativas o sobre reglamentos o procedimientos de las federaciones, podrán ser apelados al TAAD por la parte que entienda que se le han afectado sus derechos. Cap. 2, Art. 2.1(A).

La FBA está afiliada al Comité Olímpico de Puerto Rico, por lo cual cualquiera de sus dictámenes que afecten derechos de sus miembros pueden ser apelados ante el TAAD, una vez se agoten los remedios reglamentarios federativos. La Constitución y Reglamento del Comité Olímpico de Puerto Rico dispone las reglas y procedimientos que se deben llevar a cabo ante el foro apelativo para que éste pueda revisar el dictamen de la FBA.

No debemos perder de perspectiva que esta es la piedra angular que le garantiza en nuestro país a las federaciones de deportes su autonomía deportiva para dilucidar sus controversias internas sin la intervención del Estado, lo cual ha sido reconocido mediante la Ley Núm. 126, *supra*.

Del análisis de las disposiciones reglamentarias antes comentadas, podemos concluir que la FBA es una organización privada que posee un reglamento que pauta su funcionamiento interno e inclusive establece el trámite para impugnar y apelar las decisiones que emita y afecten los derechos de sus federados.

## C
La intervención judicial en decisiones de asociaciones privadas

La norma en nuestra jurisdicción, avalada por el Tribunal Supremo, es que las decisiones institucionales de entidades privadas merecen deferencia por parte de los tribunales, en especial cuando por su naturaleza requieren de peritaje o "*expertise*". Cf. *Hernández v. Asoc. Hosp. del Maestro*, 106 D.P.R. 72, 80 (1977); *Universidad del Turabo v. L.A.I.*, 126 D.P.R. 497, 506 (1990). Véase, voto particular y de conformidad por la Jueza Asociada Señora Naveira de Rodón.

No procede, como norma general, la intervención de los tribunales y del poder judicial en controversias internas de las organizaciones privadas si la parte afectada no agotó todos los remedios reglamentarios disponibles, excepto si puede probar que existe un agravio de tal naturaleza que requiera urgente reparación. *Hernández v. Asoc. Hosp. del Maestro, supra.*

Este principio descansa en que la relación entre una organización voluntaria privada y sus miembros es de naturaleza contractual, por lo cual éstos se someten y rigen por las reglas y reglamentos de dichas entidades. Los tribunales se abstienen de intervenir con los dictámenes internos de las organizaciones privadas a menos que el promovente demuestre fraude, discrimen o corrupción por parte de éstas. Arts. 1206 y 1210 de Código Civil, 31 L.P.R.A. secs. 3371 y 3375; *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 345-346 (1989); *Universidad del Turabo v. L.A.I, supra*, págs. 507-508.

## D
El "*nexo o acción del Estado*" (state action) y las asociaciones privadas

Se reconoce en nuestra Constitución en su Sec. 8 del Art. II, que las acciones civiles que envuelven daño a la reputación operan *ex proprio vigore*, pues ésta dispone que "*[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su reputación y a su vida privada o familiar*". *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 738 (1975). Cuando una organización o persona privada interviene con el derecho a la intimidad o reputación de otro ciudadano, este último puede reclamar indemnización por violaciones a sus derechos constitucionales. *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 64 (1986). (Casos citados.)

Ahora bien, cuando se hace una reclamación contra una organización privada por alegada violación a derechos constitucionales no relacionados con los derechos a la intimidad o reputación, debe probarse que existe un "*nexo o acción del Estado*" (state action) para que proceda la misma. Para analizar si existe el nexo o acción del Estado y la asociación privada, se debe auscultar si ésta recibe ayuda económica sustancial para llevar a cabo sus actividades o está reglamentada directa o indirectamente por la otorgación de licencias o franquicias. Cf. *E.L. A. v. Hermandad del Empleados*, 104 D.P.R. 436, 439 (1975); *Mercado Rivera v. U.C.P.R.*, opinión de 27 de junio de 1997, **97 J.T.S. 106**, pág. 1283. Véase además, *Brentwood Academy v. Tennesse Secondary School Athletic Ass.*, Decided February 20, 2001, 531 US __ (2001).

En una controversia relacionada con una asociación privada de deportes de Puerto Rico, donde se alegaba discrimen por razón de nacionalidad a virtud de la Ley de Derechos Civiles Federales bajo la Enmienda XIV de la Constitución de Estados Unidos, el Tribunal Federal de Apelaciones para el Primer Circuito resolvió que aplicaba la doctrina de nexo o acción del Estado. Concluyó que no procedía la reclamación contra la asociación privada deportiva, pues el demandante no pudo probar que ésta estaba sufragada sustancialmente por fondos del gobierno o que realizara una "*función pública del Estado*" al promover el deporte de baloncesto. *Ponce v. Basketball Federation of Puerto Rico*, 760 F. 2d. 375 (1st Cir. 1985).

Por último, pero no menos importante, debemos repetir que la política pública del Estado Libre Asociado de Puerto Rico es la de permitir que las federaciones deportivas se rijan por sus reglamentos y determinaciones en reconocimiento de su autonomía deportiva y que el Estado no intervendrá con éstas. Art. 2, Ley Núm. 126, *supra*.

## III

Discutida la norma jurídica que rige la controversia presentada, procedemos a su análisis de acuerdo a los hechos ante nos.

## A

Se alega como primer error, en síntesis, que incidió el Tribunal de Primera Instancia al emitir el *injunction* aplicando disposiciones constitucionales a una entidad privada e inclusive sin que se hubiera probado daños irreparables.

El error fue cometido.

La FBA es una organización privada que se rige por su reglamento. Aquellōs que tienen algún vínculo con la misma, se someten a tales disposiciones como parte de la relación contractual que se crea entre ellas. Le corresponde a la FBA determinar a quién se le concede el ser apoderado del equipo de Cayey, según lo dispone su reglamento.

La parte apelada, Gilberto Bonilla Vicente, no tiene ninguna expectativa legítima de ser nominado y aceptado como apoderado como alega en su demanda. No existe a su vez una expectativa legal de ser nombrado apoderado de un equipo de béisbol por trabajos que se hayan realizados previamente en beneficio de una franquicia. El hecho que el Alcalde de Cayey, la Asamblea Municipal, figuras del gobierno y otros líderes deportivos entiendan que una persona en particular debe ser apoderado del equipo de béisbol, no obliga a la FBA en el ejercicio de su autonomía deportiva a seleccionarlo, ni crea expectativa legítima al respecto, pues no existe disposición reglamenta₋ia alguna al respecto, con más razón, inclusive, cuando éste no reúne los requisitos reglamentarios para ser designado.

Las circunstancias particulares que la parte apelada le hubiese dado un préstamo al equipo de Cayey de $15,000.00 para costear sus gastos, no le confiere derecho alguno prioritario para ser considerado como apoderado. Dicha alegación no puede ser fundamento para sustentar que por no ser nombrado apoderado sufriría grave daño irreparable, pues tal deuda, de existir, puede ser reclamada en el foro correspondiente y no mediante el recurso de *injunction*, conforme la jurisprudencia aplicable. Además, el asumir la responsabilidad económica de un equipo no confiere privilegio o expectativa bajo el reglamento de la FBA para ser nombrado apoderado de un equipo de dicha federación.

Por último, pero no menos importante, los daños a la reputación que alega la parte apelada por no haberse nombrado como apoderado no dejan de ser meras especulaciones, pues realmente nadie tiene derecho alguno a que se le designe apoderado de un equipo de dicha federación si no cumple con los requisitos reglamentarios. En ausencia de daños irreparables a la parte apelada, no procedía como cuestión de derecho concederse el recurso extraordinario de *injunction*. Con más razón cuando la parte apelada alega y reconoce el gran apoyo que tiene de la ciudadanía en general, inclusive de la esferas gubernamentales en dicha área geográfica del país.

Debemos enfatizar que no surge del expediente, ni se probó ante el foro de instancia, que la FBA le privara o menoscabara a la parte apelada de un derecho constitucional o que por razón alguna mediara en tal controversia una "*acción del Estado*", que diera lugar a que el foro judicial interviniera en la controversia. Así lo reconoce la parte apelada en su alegato a la página 2, dɔnde expone "*[q]ue en este caso no se ha argumentado ni solicitado por la parte apelada, ni el tribunal de instancia ha resuelto, que la Federación es una entidad pública y/o que ejerce 'acción estatal'.*" Por lo tanto, la jurisprudencia citada por la parte apelada son distinguibles del presente caso, pues en ellas había un estatuto que autorizaba por excepción la intervención del tribunal, entre otros aspectos de discrimen por género; y en otros, el punto que ahora nos ocupa, no era la controversia.

La FBA es una asociación privada que tiene como razón de su existencia el promover el béisbol y no surge que el gobierno la subvencione económicamente de manera sustancial. Tampoco se ha probado por la parte apelada que la FBA esté realizando funciones del Estado, al promover como institución privada el béisbol en

nuestra isla.

Es un hecho que no está en controversia que cuando se discutió por la Junta de Directores de la FBA la solicitud del apelado para ser apoderado, éste compareció con su abogado e inclusive pudo exponer su posición y así lo acepta en sus escritos ante nos. Sobre este particular el apelado lo que alega es que las razones para no aceptarlo como apoderado, eran carentes de veracidad. (Véase, Alegato apelada, pág. 5; Exposición de la Prueba parte apelada, pág. 3, inciso 19.) Cuando el dictamen de la FBA no le fue favorable, el apelado o el equipo de Cayey, no acudieron al foro apelativo deportivo (TAAD), a alegar sus derechos.

Ante tales circunstancias, nos es forzoso el concluir que incidió el Tribunal de Primera Instancia al intervenir en una controversia interna de una organización privada, sin que se probaran violaciones de derechos constitucionales, legales o contractuales del promovente del recurso interdictal. Todo ello considerando que el apelado tuvo oportunidad a nivel de la FBA, como alegado colaborador, de exponer su posición previo el dictamen denegando su nombramiento.

Por otra parte, la FBA, como organismo rector y directivo del torneo que auspicia, tiene la responsabilidad que no se afecten económicamente, entre otros aspectos, las demás franquicias autorizadas a participar en el torneo. No se debe perder de perspectiva que un apoderado de un equipo de dicha federación realiza contratos y compromisos que pueden comprometer la solidez económica de las demás franquicias y, por ende, a la FBA.

El emitir un *injunction* permanente podría causar daños irreparables a la FBA, pues se le permitiría a un apoderado de un equipo de béisbol que no ha sido autorizado por dicha entidad por no cumplir con su reglamento, a realizar funciones de naturaleza administrativa, contractuales y de otra índole que inclusive podrían afectar económicamente a las demás franquicias.

Concluimos que incidió el Tribunal de Primera Instancia al emitir la orden de *injunction* permanente.

**B**

Como segundo error se alega, en síntesis, que incidió el Tribunal de Primera Instancia al consolidar ambas vistas, la del *injunction* preliminar y el permanente.

Sobre este particular, basta con señalar que el ordenamiento procesal civil en la Regla 57.1(b), *supra*, autoriza a que se consoliden ambas vistas. En el presente caso, una vez consolidadas ambas vistas, las partes tuvieron oportunidad de exponer sus posiciones y presentar la prueba para sustentarla, por lo cual el error no fue cometido.

**C**

Se alega por último error que incidió el foro apelado al emitir la sentencia de *injunction*, pues la parte apelada no había agotado los remedios reglamentarios ante el Comité Olímpico.

El error fue cometido.

Como antes expresamos, la parte apelada no probó que procediera su demanda de *injunction*, pues no pudo establecer que estaba sufriendo daños irreparables los cuales requerían de la concesión de tal remedio extraordinario, ni circunstancias específicas sobre violaciones a derechos constitucionales legales o contractuales.

La parte apelada inclusive tenía que acudir ante el foro apelativo del Comité Olímpico (TAAD) como antes esbozamos, a los fines de solicitar la revisión del dictamen de la FBA donde, inclusive, podría alegar cualquier defecto en el trámite interno reglamentario. La ausencia de agotar tal remedio reglamentario, le privaba, aun por excepción, de acudir al foro judicial. Resolver lo contrario, como invoca la parte apelada, sería el tratar a la FBA como una agencia del gobierno con funciones cuasi judiciales.

Concluimos que procedía que el Tribunal de Primera Instancia denegara la concesión del remedio de

*injunction*, pues inclusive la parte apelada Gilberto Bonilla Vicente no había agotado los remedios reglamentarios correspondientes.

## IV

Por los fundamentos que anteceden, se revoca la sentencia de *injunction* permanente emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, en el caso FPE01-0049, por ser contraria a derecho. Se ordena la desestimación de la demanda de *injunction* presentada.

Notifíquese inmediatamente por facsímil, teléfono y por la vía ordinaria.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General