# 2002 DTA 110

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN**
**PANEL III**

MUNICIPIO DE AIBONITO
Demandante-Recurrido

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEPARTAMENTO DE SALUD
Demandados-Peticionarios

Núm. KLCE-01-01113

San Juan, Puerto Rico, a 17 de junio de 2002

Panel integrado por su Presidente, el Juez Germán J. Brau Ramírez,
y los Jueces Antonio J. Negroni Cintrón y Jorge Segarra Olivero

Negroni Cintrón, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El Estado Libre Asociado de Puerto Rico (E.L.A.) y su Departamento de Salud instaron el recurso que nos ocupa para que revisemos y revoquemos la resolución sumaria que el 9 de agosto de 2001 emitiera el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante un corto dictamen, resolvió lo siguiente:

*"Conforme lo anterior, se determina que el Municipio incurrió en una rebaja·crasa en su presupuesto, pagando gastos que eran responsabilidad del demandado el·cual se ahorro (sic) dicho gasto sin justificación alguna, por lo que se declara Con Lugar la Solicitud de Sentencia Sumaria de la parte demandante. En consecuencia, los demandados deberán pagar los gastos incurridos por los servicios antes mencionados. La parte demandante deberá someter un memorando evidenciando el total de dichos gastos."*

Rechazada de ·plano la moción de reconsideración que formuló, instó el recurso de *certiorari* ante nos, imputándole al tribunal de instancia haber errado *"al condenar al Estado a pagar los gastos incurridos por el Municipio en la operación del C.D.T. del Municipio, cuando no existe fuente alguna para la obligación reclamada por no existir contrato escrito y por no ser de aplicación la doctrina de enriquecimiento injusto."*

Examinado el recurso, le concedimos término al Municipio para que se expresara sobre sus méritos. Transcurrido el mismo sin que lo hiciera, resolvemos.

De rigor es exponer el trasfondo fáctico y procesal que antecedió la decisión.

## I

El 17 de marzo de 1998, el Municipio presentó una demanda contra el E.L.A. y su Departamento de Salud, reclamando la cantidad de $2,964,171.21. Alegó que había sufragado los gastos, salarios y beneficios marginales de empleados municipales que permanecieron trabajando en el Centro de Diagnóstico y Tratamiento (CDT) de su municipio, después de que el Departamento de Salud comenzara a administrarlo como proveedor de servicios de salud, conforme el nuevo orden (Reforma de Salud) establecido por la Ley Núm. 72 del 7 de septiembre de 1993, conocida como la Ley de la Administración de Seguros de Salud de Puerto Rico, 24 L.P.R. A. sec. 7001 *et seq.* (Ley Núm. 72), y que había·provisto los servicios de oxígeno y ambulancias, cuya responsabilidad le correspondía al E.L.A.

Al contestar la demanda, el E.L.A. aseveró que era responsabilidad del Municipio sufragar dichos gastos; negó que existiese enriquecimiento injusto de su parte y planteó que no se justificaba el pago del dinero reclamado.

Trabada así la controversia, el Municipio presentó una *Moción de Sentencia Sumaria* reclamando el pago de $600,542.00, por concepto de salarios y beneficios marginales de empleados municipales que laboraron en el C. D.T., desde enero de 1996 hasta el 30 de junio de 1997, alegando que para este período ya estaba implantada la

Reforma de Salud, aunque no había concluido la venta del C.D.T., ▮ y el pago de $231,683.00, por concepto de servicios de ambulancia y otros gastos relacionados a la prestación de servicios médicos a usuarios del centro.

Fundamentó su reclamo en la tesis de que no estaba obligada a sufragar esos gastos, y que al hacerlo, el E. L.A. se enriqueció injustamente. Indicó que aporta al financiamiento de la Reforma de Salud: (1) con los fondos acumulados hasta el 30 de junio de 1997 provenientes del ingreso de la lotería adicional, establecido y al tenor de la Ley Núm. 23 de 26 de junio de 1997, 15 L.P.R.A. sec. 813, y, a partir del 1 de julio de 1997, (2) mediante la retención del CRIM de fondos ordinarios pendientes de remesar a los municipios, conforme la Ley Núm. 29 de 1 de julio de 1997, 24 L.P.R.A. sec. 7035 (d), por lo que alegó que no estaba obligada a realizar otras aportaciones a la Reforma de Salud o a sufragar otros costos.

En apoyo de su moción, el Municipio presentó copia de la contestación a interrogatorio suscrito bajo juramento por la Lcda. Nyvia E. Milián Falero, en representación del Departamento de Salud; copia del contrato titulado *Contrato de Transferencia de Fondos a Municipio* suscrito el 1 de noviembre de 1997 por el Departamento de Salud y la Administración de Facilidades y Servicios de Salud (AFASS), por una parte, y el Municipio, por otro; copias de dos relaciones de puestos y copia de cartas referente a la fecha de cancelación del contrato antes indicado.

Expuso que para el 1 de noviembre de 1997, el Departamento de Salud y el Municipio habían formalizado un *"Contrato de Transferencia de Fondos a Municipios"*, con vigencia retroactiva desde el 1 de julio de 1997 y hasta el 30 de junio de 1998 o hasta la fecha en que se privatizara el CDT, lo que ocurriera primero, y que durante ese período, el Departamento de Salud cubriría los sueldos de 15 empleados municipales que laboraban en el CDT.

Oportunamente, el E.L.A. se opuso a la anterior moción, presentando una *Solicitud de Sentencia Sumaria y/ o Desestimación*. Alegó, en síntesis, que el Departamento de Salud no debía la suma reclamada y que tal petición no se justificaba en derecho. Expuso que para el período a que se refiere la reclamación no existía contrato alguno entre el Municipio y el Departamento de Salud, por lo que se violentaría el Artículo VI, Sección 9 de la Constitución de Puerto Rico, y la Ley Núm. 230 de 23 de julio de 1974, conocida como la Ley de Contabilidad del Gobierno de P.R., 3 L.P.R.A. sec. 283 *et seq*; que la Ley de Municipios Autónomos, 21 L.P.R. A. sec. 4001 *et seq.*, le impone responsabilidad a los municipios de velar por el bien común local, como la salud de sus miembros, y le otorga al municipio autonomía fiscal y económica; que la Ley Núm. 72, *ante*, dispuso que los municipios tendrían que hacer una aportación al presupuesto de la Administración de Seguros de Salud de P. R. (A.S.E.S.) correspondiendo a esta última negociar con los municipios la cantidad que aportarían anualmente a la Reforma de Salud; que el Municipio no ha negociado contrato con A.S.E.S. para determinar la cantidad de su aportación y que el Municipio no realizó aportación alguna desde que fue incluido en la Reforma hasta el 30 de junio de 1997; que como patrono de los empleados, le correspondía efectuar el pago de sus salarios y demás beneficios marginales y, por último, que la doctrina de enriquecimiento injusto no podía aplicarse cuando hacerlo contravendría una política pública plasmada en un estatuto o en la Constitución.

En adición a la copia del *Contrato de Transferencia de Fondos a Municipio* y a una Relación de Puestos a que antes hemos hecho referencia, en apoyo a su moción, el E.L.A. presentó copia de una declaración del Alcalde de Aibonito aseverando que no había contratado con la Administración de Servicios de Salud; copias de certificaciones del Director de Finanzas del Municipio de la Secretaria de Salud y varios documentos y la sentencia parcial emitida en el pleito KPE97-0306 que entablaran el Municipio y otros contra la Administración de Seguros de Salud de Puerto Rico y otros en otra sala del mismo tribunal de instancia.

El Municipio replicó a ésta mediante un escrito en el que continuó discutiendo los asuntos suscitados por ambas partes e identificando aquellos hechos sobre los cuales, en su opinión, no existía controversia. Acompañó

este escrito con copias de partes de deposiciones tomadas a la entonces Secretaria de Salud, Dra. Carmen Feliciano de Melecio, al Sr. Leopoldo Mercado Santini y copias de otras comunicaciones, cartas y documentos, cuya pertinencia no fue establecida.

Celebrada una vista para discutir las mociones presentadas, el tribunal de instancia emitió el dictamen recurrido.

Estudiados con detenimiento los documentos antes indicados y los señalamientos de ambas partes en esa etapa, por los fundamentos que a continuación expondremos, debemos concluir que el tribunal de instancia erró al adjudicar **sumariamente** el asunto que consideró.

## II

No está en discusión que la sentencia sumaria es un mecanismo procesal extraordinario que tiene el propósito de facilitar la solución justa, rápida y económica de los pleitos civiles que no presenten controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Hernández Villanueva v. Hernández*, **2000 J.T.S. 26**, res. el 27 de enero de 2000.

Las Reglas 36.1 y 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establecen, en lo pertinente, que una parte que trate de obtener un remedio mediante demanda, así como una parte contra la cual se haya formulado una demanda, podrán presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. Si se trata de un demandante, podrá hacerlo en cualquier momento después de haber transcurrido veinte días a partir de la fecha en que se emplazare al demandado, o después que la parte contraria le haya notificado una moción solicitando sentencia sumaria. Si se trata de un demandado, podrá presentar la moción en cualquier momento.

En particular, la Regla 36.3, 32 L.P.R.A. Ap. III, dispone que la sentencia solicitada se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente.

Para hacerlo, el Tribunal deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquéllos que obren en el expediente del Tribunal, y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Mgmt. Adm. Servs. Corp. v. E.L.A., supra; PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881 (1994). Realizado este trámite, debe dictar sentencia sumaria sólo en aquellos casos en los que el promovente le demuestre que el promovido no puede prevalecer bajo ningún supuesto de hechos y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mgmt. Adm. Servs. Corp. v. E.L.A., supra; Corp. Presiding Bishop v. Purcell,* 117 D.P.R. 714 (1986). El tribunal no deberá dictar sentencia sumaria cuando:

*"(1) existen hechos materiales controvertidos;*

*(2) hay alegaciones afirmativas en la demanda que no han sido refutadas;*

*(3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o*

*(4) como cuestión de derecho no procede." Corp. Presiding Bishop CJC of LDS v. Purcell, supra,* a las págs. 722-723.

Ahora bien, tampoco deberá adjudicar sumariamente la cuestión, cuando no existe una clara certeza sobre todos los hechos en controversia. *Mgmt. Adm. Servs. Corp. v. E.L.A., supra; Metrop. de Préstamos v. López de Victoria*, 141 D.P.R. 844 (1996). Tampoco es aconsejable utilizar el mecanismo de sentencia sumaria en aquellos casos en que existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor credibilidad es esencial. *Rivera v. Depto. de Hacienda*, **99 J.T.S. 144**, res. el 17 de septiembre de 1999; *Piñero v. A.A.A.*, **98 J.T.S. 140**, res. el 23 de octubre de 1998; *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994).

Finalmente y considerando que la sentencia sumaria es un remedio de carácter discrecional, el Tribunal debe ejercer su sabio discernimiento como principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley. *Mgmt. Adm. Servs. Corp. v. E.L.A., supra; Córdova Ramos v. Larín Herrera*, **2000 J.T.S. 92**, res. el 2 de junio de 2000; *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613 (1990).

Al aplicar a la controversia ante nos la normativa antes expuesta, debemos concluir que el tribunal de instancia no debió adjudicar sumariamente el asunto que nos ocupa. Veamos.

## III

Un cuidadoso análisis de la prueba documental que sometieron las partes ante el tribunal de instancia con sus escritos a favor y en contra de la solicitud para que se adjudicara sumariamente sus reclamos, nos demuestra sin dificultad alguna que la complejidad y naturaleza de la controversia no es una susceptible o adecuada para que se ventile y se adjudique sin la celebración de una vista evidenciaria en sus méritos.

Una sencilla lectura de la resolución demuestra rápidamente que el Tribunal solamente decidió que el E.L.A. era responsable de la deuda reclamada, aunque no la especificó. Aun cuando la controversia era compleja, al resolver como lo hizo, indicó que las partes habían sometido el caso y estimó probados los siguientes hechos:

*"1) El 1 de noviembre de 1997, se otorgó el contrato Núm. 98-074 entre el Departamento de Salud y el Gobierno Municipal de Aibonito.*

*2) El Gobierno Municipal de Aibonito continuó proveyendo el personal y pagando por el mismo y demás gastos luego de la implantación en dicho municipio de la Reforma de Salud.*

*3) El Departamento de Salud no ha reembolsado dichos gastos aun cuando esto se estableció en una de las cláusulas del contrato."*

Después de citar parte de la normativa referente a la sentencia sumaria y el enriquecimiento injusto, razonó lo siguiente:

*"En el presente caso, nos toca resolver si el Departamento de Salud se enriquece sin causa al tener que el Municipio pagar por los servicios que alega son responsabilidad del Departamento. La Reforma de Salud fue creada por medio de la Ley 72, supra, con el propósito de implantar en Puerto Rico un sistema de seguros de salud para brindarle a todos los residentes de la isla acceso a cuidado médico-hospitalario de calidad independientemente de la condición económica y capacidad de pago de quien lo requiera.*

*Al implantarse esta reforma en el Municipio de Aibonito, el Departamento de Salud se convirtió en el proveedor de dichos servicios; no obstante, el Municipio continuaba proveyendo el servicio de oxígeno y de ambulancias que proveía antes de la Ley 72.*

*Este Tribunal entiende que dicha responsabilidad le correspondía al Departamento de Salud en su*

*capacidad de proveedor, dado el hecho de que al mismo le tocará "ofrecer el servicio de salud a la población" 24 L.P.R.A. 7002 (9).*

*Por lo tanto, el aquí demandante incurrió en gastos que a partir de la implantación de la Reforma no le correspondían, ya que los mismos le eran de entera responsabilidad al demandado.*

*Según la Ley 72, supra, la única responsabilidad que tiene el Municipio al ser implantada la Reforma de Salud emana del artículo 11 (d) de dicha ley, el cual dispone que la participación de los municipios será basada en un por ciento según su presupuesto anual. No se le impone a los municipios responsabilidad mas allá de esto. Sin embargo, dicha ley, en su sección 7028, le impone al Departamento de Salud la responsabilidad de prestar los servicios médicos necesarios al implantarse la Reforma.*

*Conforme lo anterior, se determina que el Municipio incurrió en una rebaja crasa en su presupuesto, pagando gastos que eran responsabilidad del demandado, el cual se ahorró dicho gasto sin justificación alguna, por lo que se declara CON LUGAR la Solicitud de Sentencia Sumaria de la parte demandante. En consecuencia, los demandados deberán pagar los gastos incurridos por los servicios antes mencionados. Las parte demandante deberá someter un memorando evidenciando el total de dichos gastos."*

Erró al así proceder.

Coincidimos y aceptamos que no existe controversia alguna en cuanto a que las partes suscribieron el contrato de transferencia el 1 de noviembre de 1997. Así, pues, y conforme dispone el Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994, las obligaciones que nacen de éste tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos. Perfeccionado por el mero consentimiento, desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. sec. 3375. Por tal razón, los tribunales están facultados para velar por su cumplimiento; *Selosse v. Fund. Educ. Ana G. Méndez,* 122 D.P.R. 534, 549 (1988), y no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno. *Olazábal v. U. S. Fidelity*, 103 D.P.R. 448 (1975). Además, al surgir una relación contractual, las partes acuerdan someterse y regirse por lo expresamente pactado y asumen las obligaciones incidentales al contrato. Véase, *Universidad del Turabo v. L.A.I*, 126 D.P.R. 497, 505 (1990).

No obstante, un análisis cuidadoso de los documentos que las partes presentaron en apoyo de sus mociones a favor y en contra de la disposición sumaria de la controversia planteada, demuestra que las obligaciones financieras y de otra índole de cada parte, en las circunstancias de esta causa y al tenor de la Ley Núm. 72, *ante*, no están del todo claras y los documentos no describen claramente toda la verdad necesaria para adjudicar los méritos de la reclamación del Municipio. Examinada la prueba documental presentada con las mociones, no puede concluirse con razonable certeza que el Municipio satisfizo costos y gastos que debieron ser satisfecho por el E.L.A.

Ciertamente, el 7 de septiembre de 1993, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 72, *ante*, con el propósito de propiciar una reforma de salud en el país; creó la A.S.E.S. y le confirió la responsabilidad de implantar, administrar y negociar, mediante contratos con aseguradores, un sistema de seguros de salud que le brindara a los médicos-indigentes cuidados médico-hospitalarios de calidad. Para poder cumplir con el señalado objetivo y sufragar el costo de los servicios de salud que la A.S.E.S. había de brindar a los municipios, el estatuto estableció que éstos tendrían que hacer una aportación al presupuesto de la A.S.E.S.

A tal efecto, el inciso (d) de la sección 11 del Artículo VI de la ley dispuso que la aportación municipal habría de calcularse tomando como base el presupuesto de salud de los municipios para el año fiscal 1993-94,

ajustado al valor constante del dinero para el año que se fuera a actualizar, y estableció que la A.S.E.S. negociaría con los municipios la cantidad que éstos aportarían a la A.S.E.S. anualmente.

No es difícil aceptar que la situación fiscal de los municipios se afectara. Tampoco que las partes intentaran atender la situación de las aportaciones municipales a la reforma y comenzaran a negociar con los municipios la respectiva aportación de cada uno de ellos, como se desprende de los documentos que obran en autos. Sin embargo, éstos no demuestran preponderantemente que el E.L.A. tuviera la obligación de pago que el Municipio alega en su demanda. No demuestran la inexistencia de controversia sobre cómo y en qué forma se brindaron los alegados servicios que brindó el Municipio. Aparte de alegar la existencia de contraprestaciones, los documentos no demuestran que el balance de éstas nuevamente beneficie al Municipio.

Más aún, la aprobación, el 1 de julio de 1997 de la Ley Núm. 29, la cual enmendó la Ley Núm. 72, *supra*, alteró el esquema de financiamiento para la aportación de los gobiernos municipales a la reforma de salud de la Ley Núm. 72, *supra*, que proveía que los gobiernos municipales negociaran con la ASES su aportación a la reforma, para sustituirlo por un mecanismo de aportación a base de por cientos fijos de los presupuestos municipales. La Ley Núm. 29 incluyó una tabla porcentual, a base del presupuesto de gastos ordinarios de los municipios, para calcular la aportación de éstos a la A.S.E.S. Ello necesariamente añadió elementos que el análisis que realizó el tribunal de instancia no consideró y que arroja serias dudas sobre él. Esta ley fue la que dispuso que el Centro de Recaudaciones Municipales (CRIM) retendría a los municipios sus aportaciones al plan de salud de sus remesas mensuales, las cuales serían enviadas íntegramente a la ASES. Esto es, facultó al CRIM a realizar una deducción obligatoria y directa de los ingresos de los municipios.

En fin, la prueba documental presentada por las partes es insuficiente para establecer la realidad de los alegados créditos que reclama el Municipio, aunque es correcto que la Ley Núm. 72, *ante*, dispone que el Departamento de Salud continuará prestando los servicios en aquellos municipios que no estén cubiertos por la reforma. 24 L.P.R.A. sec. 7028.

En tales circunstancias, resultaba prematuro que el tribunal de instancia considerara si la doctrina de enriquecimiento injusto constituye o no una fuente de obligación para reclamarle al E.L.A. el pago de las sumas que alegadamente satisfizo el Municipio.

"*El enriquecimiento injusto o sin causa es aquél cuando una persona se lucra o beneficia a costa de otra, sin que tal desplazamiento patrimonial se brinde con una causa jurídica.*" Diego Espín Canovas, *Manuel de Derecho Civil Español*, Vol. III. Tomo, tercera Ed., Editorial Revista de Derecho Privado, 1970, pág. 447. Para que aplique la doctrina a una situación en particular, deben estar presentes los siguientes requisitos: 1) existencia de un enriquecimiento; 2) un correlativo empobrecimiento; 3) la conexión entre empobrecimiento y enriquecimiento; 4) falta de causa que justifique el enriquecimiento; y 5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *Hatton v. Municipio de Ponce*, 134 D.P.R. 1001 (1994); *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817, 823 (1988).

Su aplicación dependerá de las circunstancias específicas de cada caso ya que el Código Civil no agota las situaciones a las que la doctrina se extiende. Tampoco es invocable cuando su efecto es vulnerar un principio importante de orden público encarnado en la Constitución o las leyes del país. Cf. *Plan de Salud v. Alcalde de Cabo Rojo*, 114 D.P.R. 697 (1983).

El tribunal de instancia determinó como hecho que las cuantías que reclama el Municipio fueron acordadas en el contrato. Ello no es correcto. Este contrato obliga al E.L.A. al pago allí acordado a nada más. El contrato que otorgara el Municipio con el Departamento de Salud lo que estipula es que el Departamento rembolsará los gastos incurridos por el Municipio en el pago de nómina de los empleados municipales que laboren en el C.D.T. desde el 1 de julio de 1997 hasta que se venda el C.D.T. Es por eso que el tribunal apeló la doctrina contra el

enriquecimiento injusto como fuente de derecho para imponerle al E.L.A. la obligación de pago. Sin embargo e independientemente de si aplica o no a la relación entre el Municipio y el E.L.A. que nos ocupa, el tribunal *a quo* no debió acudir a ella, pues la prueba documental no estableció preponderantemente esa obligación.

## IV

Por los fundamentos antes expuestos, se expide el auto solicitado, se revoca el dictamen recurrido y se devuelve la causa al tribunal de instancia para que dilucide los méritos de la reclamación de la parte apelada mediante juicio ordinario.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2002 DTA 110**

**1.** El Municipio de Aibonito quedó incluido en la Reforma de Salud en diciembre de 1995. El Departamento de Salud continuó el control del C.D.T. como proveedor de servicios desde el enero de 1996 hasta febrero de 1998.