*593 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el doctor Anthony Milanes Colón, en adelante, el apelante, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo desestimó la solicitud de injunction presentada por el apelante.
Por los fundamentos que esbozamos a continuación, Revocamos la Sentencia emitida.
I
Conforme surge del recurso ante nuestra consideración, el 7 de marzo de 2002, el apelante interpuso demanda sobre injunction permanente contra el Hospital San Cristóbal, Quality Health Services of Puerto Rico, Inc., los doctores Ramón Rodríguez Rivas, Armando Muñoz y Gabriel Martínez, en lo sucesivo, la parte apelada. En la misma, se solicitó del tribunal a quo dejara sin efecto la determinación del Hospital San Cristóbal de cancelar sumaria y permanente los privilegios del apelante. 
Argüyó el apelante, en dicho escrito, que la decisión de cancelar sus privilegios había sido arbitraria, caprichosa y sin ajustarse al reglamento que rige a la facultad médica del hospital. A su vez, requirió se emitiera dictamen ordenando el cese y desista de los procedimientos disciplinarios en su contra y la alegada interferencia indebida con los privilegios concedidos a éste. Asimismo, se solicitó el pago de costas y honorarios de abogado.
Conjuntamente con la demanda, el apelante presentó una “Moción Solicitando Interdicto Preliminar” para mantener el status quo hasta que se celebrara la vista en sus méritos.

Presentada la acción, la parte apelada solicitó la desestimación de la demanda aduciendo que el apelante no había agotado los remedios administrativos. El apelante replicó a la misma alegando que, en vista de las reiteradas violaciones de la parte apelada a las disposiciones del Reglamento que regulan el procedimiento disciplinario y de los irreparables daños que dicha conducta le había ocasionado, no se justificaba agotar el trámite institucional.

Luego de varios trámites procesales, entre ellos la presentación de una “Oposición a Moción de Prórroga“ y “Solicitud Urgente de Señalamiento de Vista para Considerar Petición de Injunction Preliminar“, el Tribunal de Primera Instancia pautó una vista para la discusión de las mociones presentadas.
Celebrada la vista, el tribunal a quo emitió dictamen desestimando la demanda. Entendió dicho foro que el apelante debía agotar los remedios institucionales antes de acudir al cauce judicial. Señaló el magistrado de instancia “que para poder determinar si fue arbitraria, caprichosa e irrazonable [la determinación del Hospital] independientemente de cómo se haya hecho, se debió haber agotado el remedio administrativo”.
Inconforme con dicha determinación recurre ante nos el apelante solicitando la revocación del dictamen emitido. Contando con la comparecencia de las partes, procedemos a resolver.
II
En su escrito el apelante nos plantea que incidió el Tribunal de Primera Instancia al no dar por admitido lot *594 hechos bien alegados en la demanda al resolver la “Moción de Desestimacióny al determinar que el apelante debe agotar el trámite administrativo, no obstante, estar sufriendo daños continuos e irreparables por la actuación arbitraria de la parte apelada.
III
La doctrina que requiere el agotamiento de remedios administrativos ha sido extendida por el Tribunal Supremo de Puerto Rico a aquellas entidades privadas que tienen un reglamento interno que establece un procedimiento para cuestionar las determinaciones de la entidad que puedan afectar a sus miembros. Universidad del Turabo v. L.A.I., 126 D.P.R. 497, 506 (1990) (Voto particular emitido por la Jueza Naveira); Hernández v. Asoc. Hosp. Del Maestro, 106 D.P.R. 72 (1977).
Esta doctrina de agotamiento de remedios es una norma de autolimitación judicial de carácter consuetudinario y esencialmente práctico. Mediante ella, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia gubernamental o de una entidad privada hasta tanto la persona afectada agote todos los remedios administrativos disponibles, de forma tal que la decisión administrativa refleje la posición final de la entidad. Rivera v. E.L.A., 121 D.P.R. 582, 593 (1988). El objeto de la misma es determinar la etapa en la cual el litigante puede recurrir a los tribunales para evitar una intervención judicial innecesaria y a destiempo que interfiera con el proceso administrativo. Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 354-355 (1988). La aplicabilidad de esta doctrina depende de la posibilidad de que a la luz de las circunstancias del caso y pericia particular de la agencia o entidad privada, la intervención judicial sea o no prematura. Guadalupe v. Saldaña, Pres. U.P.R., 133 D.P.R. 42 (1993); Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 722-723 (1982).
En Hernández v. Asoc. Hosp. Del Maestro, supra, el Tribunal Supremo aplicó la doctrina de agotamiento de remedios a aquellas situaciones en las cuales un hospital privado utiliza su discreción para suspender, limitar o retirar los privilegios otorgados a un médico de su facultad, reconociendo que éstos tenían facultad para suspender sumariamente a su personal médico, siempre y cuando estuvieran presentes cualquiera de las situaciones establecidas en su reglamento. Sin embargo, de no estar presente una de las razones para decretar la suspensión sumaria, la suspensión debería ajustarse a las normas o al procedimiento ordinario dispuesto en el mismo reglamento. Reconoció también que un médico debe tener la oportunidad de una audiencia para presentar la evidencia con que contare antes de que la acción tomada contra él por la institución sea final. En consecuencia, aclaró que, antes de recurrir a los tribunales, el médico tiene que agotar los remedios dispuestos en el reglamento del hospital.
Entendió el Tribunal Supremo qüe las decisiones institucionales de entidades privadas también merecen deferencia por parte de los tribunales, especialmente aqu’ellas que por su naturaleza tienen un peritaje (expertise) sobre la materia objeto de la controversia. No obstante, aclaró que la discreción de las autoridades hospitalarias para suspender a un miembro de la facultad o para retirarle o limitarle sus privilegios como tal, no pude ser ejercida de modo irrazonable, caprichoso o arbitrario. La relación entre una organización voluntaria privada y sus miembros es contractual y, al unirse a ella, éstos acuerdan someterse y regirse por sus reglas y reglamentos y asumen las obligaciones incidentales a esa membresía. Universidad del Turabo v. L.A.I., supra, (Voto particular emitido por la Jueza Naveira). Asimismo, no se intervendrá con las determinaciones de una asociación privada en ausencia de alegaciones de fraude, arbitrariedad, irrazonabilidad, discrimen o corrupción. Selosse v. Fund. Educ. Ana G. Méndez, 122 D.P.R. 534 (1988).
IV
Dentro del marco procesal antes enunciado, procedamos a resolver la controversia ante nuestra consideración. Por estar íntimamente relacionados, discutiremos ambos señalamientos de error al unísono.
La presente controversia se formula dentro del crisol de una moción de desestimación. Sabido es que frente *595 a una moción de desestimación, un tribunal está obligado a dar por ciertas y buenas todas las alegaciones de hechos contenidas en la demanda presentada, doctrina que, a su vez, está limitada a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no dan margen a dudas. Ramos Lozada v. Orientalist Rattan Furnt., Inc., 130 D.P.R. 712 (1992); Unisys v. Ramallo, 128 D.P.R. 842 (1991).
Transcribimos la secuela de los hechos alegados de la demanda en cuestión:

“El demandante [apelante] fue admitido como miembro de la Facultad Médica del Hospital San Cristóbal durante el mes de enero de 1999....El 13 de enero de 2002, mientras el doctor Milanés [apelante] se encontraba atendiendo una consulta del Dr. Waldemar Rodríguez en la Sala de Emergencia del Hospital, se recibió un paciente que presentaba un cuadro de gangrena en uno de sus pies. Tras examinar al paciente, el demandante [apelante] estimó prudente consultar un neurólogo, por lo que pidió a una enfermera que llamara al doctor Olivera. El doctor Olivera refirió que no había dormido suficiente, y que a menos que el paciente “no tuviera dos tiros en la cabeza ”, no acudiría a la consulta. El doctor Milanés, luego de recibir una llamada del doctor Olivera en su teléfono residencial a las 3:47 a.m., optó por cancelar la consulta -extremo que anotó en el r’ecord del paciente- aunque sin brindar detalles.

El 23 de enero de 2002, el apelante recibió en su teléfono celular una llamada del Dr. Charles H. Olivera. Durante la misma, el doctor Olivera le indicó al doctor Milanés que había sometido un “reporte ”, contra este último, a la administración del Hospital. El doctor Olivera no accedió a concertar una reunión con el doctor Milanés para discutir las razones que aquél pudo haber tenido para actuar de ese modo. En esa misma fecha, el apelante se encontró al Dr. Gabriel Martínez en uno de los pasillos del Hospital. El doctor Martínez, jefe del Departamento de Medicina Interna (Departamento de la Facultad a la cual pertenecía el Dr. Milanés), le indicó verbalmente que había un “reporte” que quería “discutir” con él. Para ello, el doctor Martínez propuso una “reunión”, la cual sería grabada, con elfin de discutir el “reporte”. El demandante le indicó que quería tener la oportunidad de leer el “reporte” en su contra antes de la “reunión”, y poder asesorarse con un abogado. El doctor Martínez propuso que se reunieran el 25 de enero de 2002, a la l:00pm, para discutir el reclamo del doctor Milanés a contar con asesoramiento legal. No obstante, cuando el apelante acudió a la reunión del 25 de enero encontró que el doctor Martínez había organizado una audiencia, que iba a ser grabada, para dilucidar los asuntos recogidos en el “reporte ”, cuyo contenido le era del todo desconocido. El doctor Milanés le comunicó al doctor Dr. Martínez que le resultaba imposible defenderse de cualquiera señalamientos en su contra, si ni tan siquiera sabía de que se trataban. ”

Así las cosas, sin que se le entregara copia de ningún documento al doctor Milanés, ni se hubiese celebrado vista, el 28 de enero de 2002, el codemandado Dr. Ramón Rodríguez Rivas le dirigió una carta al demandante que lee como sigue:

“Luego de examinar los reportes de situación generados contra su persona, procedimos a ofrecerle la alternativa de dos audiciones para aclarar los mismos, los cuales fueron rechazados por su parte.

Acorde el Manual de Reglas y Reglamentos de nuestra Institución, el Comité Ejecutivo de la Facultad Médica decidió proceder con una suspensión de sus privilegios como facultativo (Privilegios de Admisión y Consultoría) por los próximos 30 días y con efectividad el lunes 28 de enero de 2002.

Deseamos recordarle que sus privilegios continuarán activos, única y exclusivamente para aquellos pacientes que se encuentran admitidos a su servicio y/o consultoría al momento de la efectividad de la suspensión.

Durante este tiempo se llevará a cabo una investigación interna sobre las alegaciones. La determinación y disposición final sobre su caso le será comunicada al finalizar el período de suspensión.

*596
Si desea apelar esta decisión, deberá realizarlo de acuerdo a las disposiciones que establecen nuestros estatutos de la Facultad Médica (Ver anejo Artículo [sic] X). ”

El 29 de enero de 2002, el [apelante] apeló por escrito de la decisión de suspenderle sus privilegios en el Hospital. Como se puede apreciar de su escrito, una vez más el doctor Milanés denunció la ausencia de una notificación de los cargos o señalamientos en que se basada el procedimiento disciplinario al que se veía sometido por parte del Hospital y su Facultad. En respuesta a su apelación, el 14 de febrero de 2002, a las 5:00 pm, en el salón de Conferencias de la Facultad, igualmente se le informó que un “Comité Ad-Hoc” designado por el Comité Ejecutivo pasaría examen sobre lo siguiente:

1. Alegatos de Hostigamiento Laboral Empleada de Enfermería

2. Alegatos Dr. Charles Oliveras

3. Violaciones a la Normas Administrativas y conducta inapropiada como facultativo

4. Omisión información sobre problemáticas en otros hospitales

5. Práctica de privilegios no otorgados

En realidad, ni antes de que se le suspendiera, ni cuando se le convocó a la vista apelativa, ni aún a la fecha de la presentación de esta demanda, ninguno de los demandados le ha informado al doctor Milanés en qué consiste los “alegatos” mencionados en la carta del 14 de febrero suscrita por el Director Médico del Hospital, a pesar de los múltiples reclamos del demandante en este sentido. Consistentemente, el Hospital por medio del doctor Martínez, de su Director Médico (doctor Rodríguez Rivas) y del Presidente de su Comité Ejecutivo (Dr. Muñoz), le han negado al demandante [apelante] su derecho a defenderse al negarle todo acceso a los “reportes”, información, evidencia, etc., relacionados con las imputaciones o cargos que se habían generado en su contra. Como se expondrá más adelante, de conformidad con el Reglamento de la codemandada Quality Health Services of Puerto Rico, Inc. (en adelante “QHSPR”), corporación a cargo de la administración de las facilidades del Hospital, como parte del trámite disciplinario contra los miembros de la Facultad, éstos tienen derecho a una vista formal, donde se puedan confrontar con la prueba y presentar evidencia a su favor.
Llegado el momento de la vista apelativa, el demandante [apelante], repitió su solicitud de que se le permitiera examinar los “reportes” que alegadamente pesaban en su contra. Los integrantes del “Comité Ad Hoc” se reafirmaron en su posición de permitirle leer cualquier “reporte”, expediente o documento que guardara relación con los procedimientos disciplinarios que estaban supuestos a ventilarse durante la vista apelativa. Asimismo, no se le permitió asesoramiento legal. Como cuestión de hecho, la vista apelativa del 19 de febrero de 2002 se limitó a confirmarle al doctor Milanés la posición institucional de negarle acceso a copia de los “reportes” en que precisamente se basaba la decisión de suspenderle sus privilegios temporeramente. Ni el “Comité Ad-Hoc”, ni persona alguna, ofreció siquiera una cintilla de evidencia documental, testifical o demostrativa en apoyo de los “alegatos” contra el doctor Milanés; o que al menos le permitieran conocer algún detalle de los cargos por los cuales se le sometía a semejante procedimiento disciplinario.

El 22 de febrero de 2002, el doctor Rodríguez Rivas le cursó una carta al demandante notificándole que “[IJuego de la vista apelativa del Comité Ad-Hoc nombrado por el Comité Ejecutivo de la Facultad Médica recomendó suspender permanentemente sus privilegios como facultativo en el Hospital San Cristóbal, basados en los hechos encontrados en el caso. ” Se le apercibió en dicha carta sobre su derecho a apelar, dentro del término de quince (15) días, “...a nivel de la Junta de Directores del Hospital”.

Acogiendo como ciertas las alegaciones de la demanda arriba transcritas forzoso es concluir que el *597 dictamen ordenando la continuación de los procedimientos en el foro institucional no puede sostenerse.
Cuando una empresa o compañía adopta un reglamento o manual de normas estableciendo un procedimiento y reconociendo determinados derechos, surge una obligación a cuyo cumplimiento pueden ser compelidas ambas partes. En otras palabras, queda establecido un debido proceso de ley contractual. Véase, Sellóse v. Fundación Educativa Ana G. Méndez, supra; Hernández v. Asociación Hospital del Maestro, supra.
El Reglamento del Hospital San Cristóbal establece en su Artículo X:

“When any practitioner receives notice of a recommendation of the Board of Directors Committee that, if ratified by the Governing Body, will adversely affect his/her appointment to or status as a member of the Faculty Staff or his/her exercise of clinical privileges, he/she shall be entitled to a hearing before an Ad-Hoc Comite of the Faculty Staff.

If the recommendation of the Board Of Director Committee following such hearing is still adverse to the affected practitioner, he/she shall then be entitled, to an appellate review by the Governing Body before the Governing Body makes a final decision on the matter.

When any practitioner receives notices of a decision by the Governing Body, that will affect his/her appointment to or status as a member of the Faculty Staff, or his/her exercise of clinical privileges and such decision is not based on a prior adverse recommendation by the Board of Directors Committed of the Faculty Staff, that would have entitled the practitioner to an Ad-Hoc hearing, he/she may appeal to the Governing Body, before the Governing Body makes a final decision on the matter.

[[Image here]]

The notice of hearing shall state in concise language the acts or omission for which the practitioner is charged; and a list of the specific charges and any other reasons that where taken into consideration in making the adverse recommendation or decision.

[[Image here]]

The affected practitioner shall have the followings rights: to call and examine witnesses, to introduce written evidence, to cross-examine any witness on any matter relevant to the issue of the hearing, to challenge any witness, and to rebut any evidence.

[[Image here]]
En el presente caso, conforme hemos visto, el apelante alegó precisamente que la parte apelada no observó el procedimiento instituido en el Reglamento. La demanda es clara al alegar que la parte apelada suspendió los privilegios del apelante sin previamente haberle notificado a éste los fundamentos para la determinación, cancelando dichos privilegios sin la celebración de una vista previa. Consideramos que, a la luz de estas alegaciones, el tribunal a quo erró al desestimar la demanda. La contención del apelante de que la suspensión de sus privilegios no había observado el trámite requerido por el Reglamento de la Institución y que no se había brindado una oportunidad de conocer los fundamentos de dicha actuación ni defenderse de la misma, justifican que se exima a dicha parte del requisito de agotar el trámite institucional.
Por último, el Tribunal de Primera Instancia descansó su determinación en Hernández v. Asoc. Hosp. del Maestro, supra. En dicho caso, la Facultad Médica del Hospital del Maestro recomendó suspenderle los privilegios al Dr. Hernández por las razones expuestas en un pliego de cargos que le fue debidamente *598 notificado. Los cargos imputados al facultativo estaban apoyados por declaraciones juradas que se le presentaron. Conforme el Reglamento de la institución, el médico solicitó una vista de reconsideración ante un Comité de Revisión Judicial. En la vista celebrada ante cinco (5) representantes de la Facultad y la Junta de Directores, el doctor tuvo amplia oportunidad para presentar sus puntos de vista e interrogar testigos. Dicho Comité rindió un informe con recomendaciones adversas contra el médico. Sin embargo, se resolvió extenderle un nombramiento provisional con duración de un (1) año. Previo a vencer el mismo, el Director Médico decidió suspender los privilegios del Dr. Hernández. Este solicitó, conforme el Reglamento, solicitó y obtuvo una vista de reconsideración. Estando pendiente dicho señalamiento, el tribunal emitió una orden de interdicto preliminar contra el Hospital del Maestro. El Tribunal Supremo señaló que, con excepción de la suspensión sumaria, hasta ese momento se habían seguido el trámite administrativo. Indicó dicho Foro:
“También se ha reconocido que un médico debe tener la oportunidad de una audiencia para presentar la evidencia con que contare antes de que la acción tomada contra él por la institución sea final, a menos que su continuada presencia en el hospital constituyera una seria e inmediata amenaza. (Citas omitidas)

En cuanto a sus remedios ante los tribunales, es nuestra opinión que, antes de recurrir a ellos, debe haber agotado los remedios que ofrecen los procedimientos disponibles en ley, y solamente intervendremos cuando el hospital hubiere incurrido en violaciones de sus propios requisitos procesales de notificación y vista. ”

106 D.P.R. 72, 80 (1977).
Observamos que el caso citado es distinguible de las circunstancias de la situación ante nos donde no se cumplió con la reglamentación aplicable y la determinación por la institución tomada es, a todas luces, una final. Bajo este escenario, reiteramos, no procedía agotar los remedios institucionales.
En su consecuencia, incidió el foro de instancia al desestimar la demanda. Procedía celebrar la vista sobre injunction y adjudicar los méritos del recurso incoado, concediendo el tribunal a quo cualquier remedio que proceda en derecho conforme a los hechos probados en el juicio. Magriz v. Empresas Nativas, 143 D.P.R. 63 (1997); Candalv. CTRadiology, 112D.P.R. 227 (1982).
y
Por los fundamentos expresados anteriormente, se Revoca la Sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí dispuesto.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida I. Oquendo Graulau Secretaria General
ESCOLIO 2003 DTA 1
1. El apelante había sido admitido como miembro de la Facultad Médica del Hospital San Cristóbal durante el mes de enero de 1999.